CC-95-131                                                                    1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| RENE APONTE CARATINI<br>    Demandante-Recurrido<br><br>    .V<br><br>LUIS GUILLERMO ROMAN TORRES Y OTROS<br><br>    Demandado-Peticionario | Certiorari<br><br>TSPR98-53 |

Número del Caso: CC-95-0131

Abogados Parte Peticionaria: LCDA. IRIS M. MONROUZEAU
LCDO. RAUL E. CASASNOVAS BALADO

Abogados Parte Recurrida: LCDO. MAXIMILIANO TRUJILLO
LCDO. ANTONIO MOREDA TOLEDO

Abogados Parte Interventora:

Tribunal de Instancia: Superior,  Sala de San Juan

Juez del Tribunal de Primera Instancia: Hon. ANGEL M. ALMODOVAR

Tribunal de circuito de Apelaciones: CIRCUITO REGIONAL I

Juez Ponente: Hon. APONTE GIMENEZ

Fecha: 5/6/1998

Materia: NULIDAD DE SUBASTA PUBLICA

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


nte Caratini

nte-Recurrido


    v.                        CC-95-131


Román Torres y otros

dos-Recurrentes



ecial integrada por la Juez Asociada señora Naveira de Rodón, como su
ta, y los Jueces Asociados señores Fuster Berlingeri y Corrada del Río.[1]

SENTENCIA


San Juan, Puerto Rico, a 6 de mayo de 1998


I

El 28 de septiembre de 1994, el demandante recurrido René Aponte
Caratini presentó ante el Tribunal de Primera Instancia, Sala Superior
de San Juan, una demanda contra American Realty Investment Corp. (en
adelante American), José A. Medina

---

[1] Por la no intervención del Juez Presidente señor Andréu García y el
Juez Asociado señor Rebollo López, y dada la inhibición de los Jueces
Asociados señores Negrón García y Hernández Denton, se constituyó una
Sala Especial integrada por la Juez Asociada señora Naveira de Rodón,
como su Presidenta, y los Jueces Asociados señores Fuster Berlinger y
Corrada del Río.

Marrero,[2] Luis Guillermo Román Torres, su esposa Alicia Santos Rivas y la sociedad de gananciales compuesta por éstos (Caso II).[3] Entre otras cosas, alegó que era el dueño de un inmueble que adquirió de Iris Nereida Alicea Aponte por la suma de trescientos setenta y cinco mil dólares ($375,000) mediante la Escritura Núm. 3 de 10 de junio de 1991 ante el notario público José H. Rivera Cintrón. Esta escritura de compraventa fue presentada para inscripción en el Registro de la Propiedad el 13 de abril de 1992. De otra parte, indicó que el 21 de agosto de 1991 había otorgado una hipoteca sobre dicho inmueble a favor de NECA Mortgage Corporation (en adelante NECA) por la suma de doscientos cincuenta mil dólares ($250,000). Esta hipoteca fue presentada en el Registro de la Propiedad el 7 de julio de 1992.

Alegó, además, que el codemandado Medina Marrero había presentado una demanda anterior contra Alicea Aponte y que en el curso de esos procedimientos el tribunal había ordenado el embargo del inmueble antes mencionado (Caso I).[4] El mandamiento de embargo se expidió el 29 de agosto de 1991 y fue presentado para su inscripción en el Registro de la Propiedad el 18 de septiembre de 1991.

El demandante Aponte Caratini también expresó que cuando se otorgaron las escrituras de compraventa e hipoteca, él desconocía que existiera una controversia entre Marrero Medina y Alicea Aponte. Agregó que para la fecha en que se otorgó la escritura de compraventa, el 10 de junio de 1991, no se había expedido el mandamiento de embargo.[5] El mandamiento de embargo se emitió el 29 de agosto de 1991.

---

[2] En el epígrafe de la demanda también aparecen como demandados la esposa de Medina Marrero, identificada como Jane Doe, y la sociedad de bienes gananciales compuesta por ambos.

[3] Para propósitos de claridad, identificaremos esta acción como Caso II.

[4] Para distinguirlo del Caso II, identificaremos esta acción como Caso I.

[5] Alegó, además, equivocadamente, que cuando se otorgó la escritura de compraventa, el 10 de junio de 1991, aún no se había dictado la sentencia en rebeldía en el caso de cobro de dinero contra Alicea

Continuó alegando que se enteró accidentalmente del Caso I (sobre cobro de dinero) y de la venta del inmueble en pública subasta. Intentó intervenir en dicho caso, pero el tribunal, el 28 de abril de 1993, le denegó la intervención basándose en la teoría de que la compraventa fue una hecha en fraude de acreedores; y que, por lo tanto, él (Aponte Caratini) no tenía un interés propietario en el inmueble subastado. De esta determinación Aponte Caratini solicitó reconsideración, y acompañó copia de los siguientes documentos: (1) carta de 4 de febrero de 1991, en la cual Aponte Caratini le confirma a Alicea Aponte una oferta de opción de compra por la cantidad de trescientos mil dólares ($300,000);[6] (2) un pagaré personal de 5 de junio de 1991, por la cantidad de ciento ochenta y siete mil treinta y ocho dólares con treinta y cuatro centavos ($187,038.34);[7] y (3) varias fotocopias de cheques.[8] El Tribunal denegó la moción.[9]

Asimismo, Aponte Caratini indicó que en el Caso I, el tribunal había denegado la intervención sumariamente, sin vista previa en la

---

Aponte (Caso I). Cabe señalar que la sentencia en rebeldía se emitió el 30 de agosto de 1990 y se notificó el 10 de septiembre de 1990.

[6] La carta tiene una fecha impresa en maquinilla que lee 16 de enero de 1991, pero esta fecha está tachada y sustituida a manuscrito por la de 4 de febrero. También aparece tachada la cantidad de doscientos setenta y cinco mil dólares ($275,000) y sustituida a manuscrito por la cantidad de trescientos mil dólares ($300,000). Además, sobre la cantidad de mil dólares ($1,000) que indicaron que se estaban incluyendo, se escribió a manuscrito la suma de cinco mil dólares ($5,000). Las enmiendas no aparecen iniciadas. Sin embargo, tanto Aponte Caratini como Alicea Aponte firmaron la carta dos veces.

[7] El pagaré no está notarizado.

[8] Todos los cheques están hechos a nombre de Iris Alicea y son por las cantidades de $5,000, $5,000, $1,000 y $200. Se incluyó también la fotocopia de un cheque a nombre de First Service Corp. por la cantidad de $8,222.04. No se incluyó fotocopia del dorso de los cheques, ni explicación sobre el cheque a First Service Corp.

[9] De estas determinaciones Aponte Caratini recurrió mediante petición de certiorari ante nos. En aquella ocasión, el 29 de abril de 1994, emitimos una resolución, mediante la cual denegamos el recurso por craso incumplimiento con el Reglamento del Tribunal Supremo y por no haberse acreditado nuestra jurisdicción. En consecuencia, no entramos a dilucidar la controversia en los méritos. Luego de varias mociones de reconsideración y de que nuestra resolución adviniera final y firme, el 28 de septiembre de 1995, Aponte Caratini presentó la demanda en el caso de autos (Caso II).

cual él pudiera presentar prueba y contrainterrogar testigos.[10]  Señaló que la propiedad había sido vendida en pública subasta al codemandado Román Torres, por "la suma irrisoria de $16,500.00"; y que el 17 de mayo de 1993 se otorgó una escritura de venta judicial.  Esta fue presentada al Registro de la Propiedad.

A la luz de estos hechos solicitó que se anulara la subasta pública, se ordenara al Registrador de la Propiedad que denegara la inscripción de la venta judicial y mantuviera en todo su vigor y efecto la inscripción de la propiedad a su nombre.[11]  Añadió que las sumas de dinero consignadas deberían ser entregadas por el Tribunal a la parte con mejor derecho a ellas.[12]

La codemandada American[13] contestó la demanda del Caso II, aceptando algunas de las alegaciones y negando otras.  Presentó varias defensas afirmativas, entre las cuales incluyó la de "impedimento colateral por sentencia y/o resolución".  También reconvino alegando que Aponte Caratini le había privado de su derecho de propiedad, impidiendo que pudiese enajenar la propiedad causándole daños que ascendían a doscientos cincuenta mil dólares ($250,000), además de sufrimientos y angustias emocionales por la suma de cien mil dólares ($100,000).[14]

Así las cosas, el 19 de diciembre de 1994, el codemandado American le envió un requerimiento de admisiones al demandante Aponte Caratini.

---

[10] El 16 de febrero de 1992, el tribunal había emitido una orden indicando que denegaba la intervención y solicitándole al demandante American que sometiera un proyecto de resolución.

[11] El tribunal también denegó la solicitud de Aponte Caratini de que se anulase la subasta celebrada.

[12] La demanda la acompañó con una certificación del Registro de la Propiedad sobre la propiedad objeto de este litigio.

[13] Del expediente del Caso I en el foro de instancia surge que el tribunal ordenó la entrega de los dieciséis mil quinientos dólares ($16,500) a American el 28 de enero de 1994 y que el 11 de febrero se le hizo entrega de un cheque por esa cantidad.

El 8 de febrero de 1995, no habiendo éste contestado aún el requerimiento de admisiones, la parte demandada solicitó, mediante una moción de sentencia sumaria, la desestimación de la demanda.[15] Alegó que procedía la defensa de cosa juzgada y la reconvención presentada.

Luego de una serie de mociones, el 1ro de mayo de 1995, el foro de instancia denegó la moción de sentencia sumaria. Oportunamente, la parte demandada solicitó reconsideración. Esta fue denegada el 26 de abril de 1995.

Inconformes, los demandados presentaron una petición de certiorari ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). El 10 de octubre de 1995, dicho foro emitió una sentencia mediante la cual confirmó la resolución dictada en instancia. Oportunamente, la parte demandada presentó ante nos una petición de certiorari alegando que el Tribunal de Circuito erró al confundir la acción rescisoria pauliana con la nulidad radical y absoluta por simulación; y al determinar que no era de aplicación la doctrina de cosa juzgada o impedimento colateral por sentencia. Visto el recurso presentado, concedimos al demandante recurrido término para comparecer y mostrar causa por la cual no deberíamos revocar la sentencia recurrida. La parte recurrida compareció, por lo que resolvemos sin ulteriores procedimientos.

## II

Por la importancia que tiene para la solución de la controversia que se nos plantea, hemos examinado el expediente original del Caso I en el tribunal de instancia. De éste surge que la demanda en dicho caso versa sobre el cobro de un pagaré no garantizado por la cantidad de doce mil dólares ($12,000). La parte demandada, Alicea Aponte, no

---

[14] Lo curioso de esta alegación es que ya para la fecha en que se presentó la reconvención, American no era la dueña de la propiedad. Esta ya pertenecía, por venta judicial, al codemandado Román Torres.

[15] Cabe señalar que no hemos encontrado en los autos originales del Caso II en el foro de instancia contestación a la demanda por parte de alguno de los otros codemandados.

compareció, por lo que la sentencia se dictó en rebeldía. Luego de una serie de trámites procesales, la mayor parte de los cuales ya hemos mencionado, la subasta se celebró el 5 de octubre de 1992 y el adquirente por la cantidad de dieciséis mil quinientos dólares ($16,500) lo fue el codemandado en el Caso II, Román Torres. A pesar de esto y de que el 17 de mayo de 1993 se había otorgado una escritura de venta judicial a favor de Román Torres, que ésta había sido presentada al Registro de la Propiedad el 24 de julio de 1994 y que el 11 de febrero de ese mismo año American había retirado los fondos consignados por el adjudicatario Román Torres, fue American la que solicitó el lanzamiento de Alicea Aponte de la propiedad objeto de la controversia.

Surge también del expediente del Caso I en instancia que NECA solicitó la intervención el 12 de abril de 1995, ya que tenía un pagaré garantizado por una hipoteca sobre la propiedad objeto de controversia por la suma principal de doscientos cincuenta mil dólares ($250,000).[16] El 26 de abril el tribunal denegó la solicitud de intervención de NECA.

El día después de celebrada la subasta, el 6 de octubre de 1992, Aponte Caratini presentó un escrito donde solicitó la intervención. Este alegó ser el propietario del inmueble subastado. El tribunal ordenó a la parte demandante contestar. Esta contestó planteando que el contrato de compraventa entre Alicea Aponte y Aponte Caratini carecía de causa, ya que se trataba de una simulación. El tribunal entonces ordenó al "Interventor" Aponte Caratini replicar. El 29 de octubre de 1992 Aponte Caratini presentó otro escrito donde nuevamente alegó que era el titular del inmueble objeto de la controversia. Acompañó con el mismo una copia certificada de la escritura de compraventa. Expresó que la escritura de compraventa se había

---

[16] Sobre la validez de este pagaré hipotecario el 10 de marzo de 1995, NECA presentó una demanda de sentencia declaratoria contra American, Román Torres y Alicia Santos Rivas.

presentado al Registro de la Propiedad para su inscripción el 13 de abril de 1992.

El 23 de octubre de 1992, American presentó una moción esbozando la teoría de que la compraventa había sido en fraude de acreedores. Arguyó que según el Artículo 1249 del Código Civil, 31 L.P.R.A. sec. 3498, y el Artículo 40 de la Ley Hipotecaria,[17] surgía una presunción de que la venta había sido en fraude de acreedores. Específicamente, se basó en que en la escritura de compraventa se expresaba que Alicea Aponte había recibido el dinero con anterioridad al acto del otorgamiento de la escritura, y que la compraventa se realizó con posterioridad a que se hubiese dictado la sentencia en el caso de cobro de dinero.

Del expediente del Caso I en instancia no surge que el codemandado en el Caso II, Román Torres, el dueño de la propiedad y adjudicatario en pública subasta, hubiese sido parte en esos procedimientos, ni que se le hubiese notificado de la impugnación de la subasta y la solicitud de invalidar su título propietario.

Con este marco fáctico en mente, procederemos a exponer el derecho aplicable a esta situación.

### III

La Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que serán partes indispensables en un pleito aquellas "personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, [éstas] se harán partes y se acumularán como demandantes o demandadas según corresponda".

En varias ocasiones hemos tenido la oportunidad de examinar la figura procesal de parte indispensable. La hemos comparado con su

---

[17] American, erróneamente, utilizó el Art. 40 de la Ley Hipotecaria de 1893 para fundamentar su moción. Este Artículo no tiene un equivalente directo en la Ley Hipotecaria de 1979. Las disposiciones relacionadas se encuentran en los Arts. 108 y 109 de la ley, 30 L.P.R.A. secs. 2358 y 2359.

contraparte federal, de donde proviene: la Regla 19 de Procedimiento Civil Federal.[18] En Hernández Agosto v. López Nieves, 114 D.P.R. 601 (1983), señalamos que a diferencia de la federal, la Regla 16.1 contiene la frase "sin cuya presencia no pueda adjudicarse la controversia". Advertimos que la misma tiene su entronque en la antigua doctrina inglesa sobre la indispensabilidad. También expresamos que el interés afectado tiene que ser de índole real e inmediata, al extremo de impedir la confección de un remedio adecuado.

En Rodríguez Rodríguez v. Moreno Rodríguez, Op. de 5 de abril de 1994, 135 D.P.R. _____ (1994), 94 JTS 43, indicamos que esta Regla persigue el propósito de proteger a la persona ausente de los posibles efectos perjudiciales de un dictamen judicial y evitar la multiplicidad de pleitos. Véanse, además: Granados v. Rodríguez Estrada II, infra; Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 412-13 (1982); Hernández Agosto v. López Nieves, supra. También recalcamos que ésta entronca con la cláusula constitucional del debido proceso de ley. II Práctica Procesal Puertorriqueña, Pub. JTS (1979), pág. 212.

Con relación a la omisión de incluir una parte indispensable, hemos expresado que "aunque es motivo para desestimar un pleito, no constituye impedimento para que, a solicitud de la parte interesada, el tribunal pueda conceder la oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando el tribunal pueda adquirir jurisdicción sobre la misma." Meléndez Gutiérrez v. E.L.A., 113 D.P.R. 811, 816 (1983). El Lcdo. Rafael Hernández Colón comenta al respecto que "si una parte indispensable no ha sido unida al pleito, el tribunal

---

[18] En Granados v. Rodríguez Estrada II, 124 D.P.R. 593, 604 (1989), al escolio número 1, expresamos lo siguiente:

> En el foro federal no existe una distinción a priori entre lo que es una parte indispensable y una no indispensable pero acumulable a discreción del tribunal. Al contrario, si el tercero ausente cumple con alguno de los criterios tiene que acumularse, a menos que no sea factible por problemas de jurisdicción sobre la persona o por obstáculos procesales propios del foro federal, como falta de jurisdicción sobre la materia o ausencia de competencia ("venue"). 7 Wright, Miller

debe ordenar que dicha parte sea incorporada y en caso de que no se le acumule porque dicha parte esté fuera de la jurisdicción o por cualquier otra razón, procederá entonces la desestimación de la demanda". Rafael Hernández Colón, Práctica jurídica de Puerto Rico. Derecho procesal civil, Michie de Puerto Rico, 1997, pág. 116, Sec. 1208. Con relación a la falta de parte indispensable, también hemos resuelto que "es de orden tan relevante y vital que puede presentarse en apelación por primera vez o aun suscitarse por este Tribunal sua sponte." Hernández Agosto v. López Nieves, supra, pág. 603.

Además, hemos sostenido que cuando a las personas ausentes del pleito no se les ha brindado la oportunidad de salvaguardar unos derechos e intereses que podrían verse afectados, no se le puede imprimir finalidad a la adjudicación de la controversia medular. Dichas personas tienen que ser acumuladas como partes. No es suficiente ni siquiera que el ausente haya sido informado de su oportunidad de intervenir en el pleito. Mientras no sea parte, no se le puede privar de sus derechos mediante una sentencia. Granados v. Rodríguez Estrada II, supra, pág. 604; Fuentes v. Tribl. de Distrito, 73 D.P.R. 959, 981 (1952); Pueblo v. Henneman, 61 D.P.R. 189, 194 (1942).

En cuanto a la figura procesal de la intervención, la Regla 21.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece específicamente que cuando "un alguacil procediere a cumplimentar una orden de ejecución, embargo o cualquier otra orden contra alguna propiedad mueble o inmueble y dicha propiedad, o cualquier parte de ella, o algún interés en la misma, fuere reclamado por un tercero, éste tendrá derecho a presentar una demanda de intervención." (Enfasis nuestro.) Como puede observarse, esta intervención procede como cuestión de derecho. La Regla 21.5 es una autóctona inspirada en la ya derogada Ley de Tercería de 14 de marzo de 1907. Esta Ley disponía que "[l]a tercería respecto a bienes muebles se iniciará por demanda que

_____

and Kane, Federal Practice and Procedure: Civil 2d Sec. 1607 (1986).

formalizará el reclamante contra <u>todas las personas que tengan interés</u> <u>en el asunto y el juicio se sustanciará por los trámites del Codigo de</u> <u>Enjuiciamiento Civil</u>". (Enfasis nuestro.)[19] En cuanto a la posible suspensión de una subasta, la Ley establecía específicamente que ésta procedía sólo mediante interdicto prohibitorio (injunction) emitido de acuerdo a la Ley de Injunctions de 8 de marzo de 1906.

A tenor con la jurisprudencia que precedió la aprobación de la Ley de Tercería, este Tribunal había resuelto en <u>Hidalgo</u> v. <u>García de la Torre</u>, 1 D.P.R. 495, 497 (1903), que "de un embargo acordado por providencia judicial, como dirijido [sic] únicamente a garantir las consecuencias del juicio, no altera la naturaleza de las obligaciones, ni puede convertir en real e hipotecaria la acción personal que carece de este carácter, pues no produce otros efectos que los que el acreedor que la obtenga sea preferido, en cuanto a los bienes anotados, solamente, a los que tengan contra el mismo deudor otro crédito, contraído con anterioridad a dicha anotación". En dicho caso, se había constituido una escritura de préstamo hipotecario antes de la anotación del embargo, pero ésta no se había inscrito. Bajo estas circunstancias el Tribunal resolvió que "por más que la inscripción de aquella escritura se hiciera con fecha posterior a la anotación, pues una vez verificada dicha inscripción, se llenó el requisito que faltaba para que la hipoteca quedara válidamente constituida." Ibid, págs. 497-98. En igual sentido resolvimos recientemente, con respecto a la figura del embargo, en <u>Pérez Mercado</u> v. <u>Martínez Rondón,</u> Op. de 9 de marzo de 1992, 130 D.P.R.___(1992), 92 JTS 32.

Como se puede apreciar, tanto la Regla 21.5 como su antecesora, la Ley de Tercería, estaban predicadas bajo la premisa de que cuando en la etapa posterior al juicio, se suscitaba un conflicto sobre titularidad relacionado con la propiedad que había sido embargada y en la etapa de ejecución era objeto de subasta o había sido objeto de una subasta

---

[19] El 14 de marzo de 1908 se enmendó esta ley para incluir la figura de la tercería con relación a los bienes inmuebles.

judicial, para resolver este conflicto se hacía necesario la presentación de una demanda contra "todas las personas que tengan interés en el asunto." Ambas disposiciones procesales exigen que los procedimientos para dirimir el conflicto de titularidad se rijan por las Reglas de Procedimiento Civil.

Siguiendo esta misma vertiente, el Artículo 125 de la Ley Hipotecaria de 1979 dispone, con relación a la figura del embargo, lo siguiente:

> Podrán registrarse los títulos en que se enajenen o graven bienes inmuebles anotados sin perjuicio del derecho de la persona a cuyo favor se haya hecho la anotación, siempre que su enajenación no esté prohibida o, estándolo, se trate de ventas en ejecución de derechos registrados con anterioridad.
> Si antes que el acreedor haga efectivo su crédito, pasare el bien o derecho anotado a manos de un tercer poseedor o subadquirente, éste, acreditando su título, podrá pedir que se le exhiban los autos en la secretaría y el tribunal lo acordará así sin paralizar el curso del procedimiento, disponiendo a la vez que se entiendan con él los trámites ulteriores, como subrogado en el lugar y grado del deudor, pero sólo en cuanto a los efectos de la ejecución del bien o derecho anotado.
> Los adquirentes anteriores a la anotación podrán inscribir sus títulos e instar las acciones adecuadas para hacer valer sus derechos, sin perjuicio de lo dispuesto en las secs. 2403 y 2473 de este título. (Énfasis nuestro.) 30 L.P.R.A. sec. 2414.

Aplicando esta disposición, en Rosario Pérez v. Registrador, 115 D.P.R. 491 (1984), a la página 493, resolvimos que "los actos dispositivos otorgados con anterioridad a la anotación no están afectados por ésta, como tampoco los actos dispositivos posteriores basados en la venta en ejecución de derechos registrados con anterioridad".

Por su parte, el Reglamento Hipotecario dispone, en lo aquí pertinente, que "en cuanto al procedimiento adecuado para la intervención por el tercer poseedor, subadquirente, o cualquier otro interesado en el pleito anotado, se estará a lo dispuesto en las Reglas de Procedimiento Civil vigentes". Regla 123.3 del Reglamento Hipotecario. De estas disposiciones surge con meridiana claridad que cuando una persona adquiere una finca antes de que se haga una

anotación preventiva de embargo sobre la misma, esta persona tiene el derecho a instar contra todas las personas cuyos derechos puedan quedar afectados las acciones adecuadas para hacer valer sus derechos, incluyendo una intervención en el pleito original.

En cuanto a la norma de derecho utilizada por el foro de instancia para resolver la controversia en el caso de autos, la de cosa juzgada, el Artículo 1204 del Código Civil, 31 L.P.R.A. sec. 3343, dispone que "[p]ara que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron." (Enfasis nuestro.) En lo que respecta a la doctrina de impedimento colateral por sentencia, una modalidad de cosa juzgada, hemos resuelto que una "sentencia anterior es concluyente solamente en cuanto a aquellas materias que de hecho se suscitaron y verdaderamente o por necesidad se litigaron y adjudicaron, pero no es concluyente en cuanto a aquellas materias que pudieron ser pero que no fueron litigadas y adjudicadas en la acción anterior." (Enfasis nuestro.) Millán v. Caribe Motors Corp., 83 D.P.R. 494, 506-507 (1961).

En A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753 (1981), analizamos las dos modalidades de la doctrina de impedimento colateral por sentencia, la ofensiva y la defensiva. En dicho caso expresamos que en esta área del derecho hemos ido creando un derecho autóctono con miras a aprovecharnos de los mejores elementos de los dos sistemas de derecho que rigen en nuestra jurisdicción, uno en el campo sustantivo y otro en el procesal. Advertimos, sin embargo, que debe tenerse presente que la doctrina de cosa juzgada, por ser parte de nuestro derecho civil sustantivo, hace "innecesario, excepto para fines comparativos, acudir a otras fuentes para su análisis." Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R. 533, 535 (1975); A & P Gen. Contractors v. Asoc. Caná, supra.

Como parte de la creación de nuestro derecho autóctono y como complemento a la doctrina de cosa juzgada, hemos adoptado la figura procesal de impedimento colateral por sentencia. Esta adopción, sin embargo, sujeta esta figura jurídica a las disposiciones de nuestro derecho sustantivo. Por lo tanto, la misma sólo "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final ... [y] es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas". (Enfasis nuestro.) A & P Gen. Contractors v. Asoc. Caná, supra, a la pág. 762.

Con estas normas de derecho presentes pasemos ahora a analizar su aplicación al caso de autos.

IV

De los hechos antes expuestos surge con meridiana claridad que el adjudicatario Román Torres, el dueño por venta judicial del inmueble objeto de esta controversia, nunca fue parte de los procedimientos post sentencia sobre nulidad de subasta; que dicho procedimiento fue uno de naturaleza interlocutoria; que él nunca presentó demanda de intervención; que, por lo tanto, no se siguieron los procedimientos que establecen las Reglas para la tramitación de las demandas; y que la determinación del foro de instancia al resolver un incidente procesal interlocutorio (la procedencia de una solicitud de intervención) fue una resolución, no una sentencia.

Tampoco cabe duda que el codemandado Román Torres era una parte indispensable en cualquier procedimiento en que se pretendiere impugnar la subasta o anular la compraventa judicial. Cualquier sentencia o resolución que en su día pudiera dictar el tribunal podría incidir sobre sus derechos propietarios. Para que el tribunal pudiera adjudicar la titularidad del inmueble objeto de la controversia, su dueño era y es una parte indispensable en el proceso.

Por otro lado, es obvio que para levantar eficazmente la defensa de cosa juzgada, el pleito actual (Caso II) tiene que ser entre las mismas partes que el pleito anterior (Caso I). Por requisito estatutario, tiene que haber la más completa identidad en las personas de los litigantes. Artículo 1204 del Código Civil, supra. Ahora bien, Román Torres, propietario del inmueble objeto de este litigio, nunca fue parte en el pleito anterior ni en los procedimientos post sentencia. La desestimación del pleito contra el codemandado Román Torres (Caso II) conforme a la doctrina de cosa juzgada no procedía, pues faltaría el requisito de que la sentencia previa fuese entre las mismas partes. Este hecho procesal también impide la finalidad de las determinaciones sobre titularidad hechas por el foro de instancia en el Caso I, lo que a su vez imposibilita la desestimación del pleito contra American, ya que sus derechos podrían quedar afectados por la sentencia que en su día pudiera recaer en el Caso II.

De otro lado, debemos destacar que aun cuando se den todos los requisitos, la doctrina de cosa juzgada no se aplicará inflexiblemente cuando así hacerlo derrotaría los fines de la justicia. Pagán Hernández v. U.P.R., 107 D.P.R. 720 (1978); Feliciano Ruiz v. Alfonso Develop. Corp., 96 D.P.R. 108, 114 (1968); Millán v. Caribe Motors Corp., 83 D.P.R. 494 (1961); Pérez v. Bauzá, 83 D.P.R. 220, 226 (1961).[20] Según expresáramos, el dueño por venta judicial del inmueble nunca fue parte en el Caso I, aun cuando era parte indispensable sin cuya presencia no se podía adjudicar la controversia. Bajo las circunstancias procesales del caso de autos, además de no estar presentes todos los requisitos que exige la doctrina de cosa juzgada, se sirven mejor los intereses de la justicia si la misma no se aplica.

Abunda a esta posición el hecho de que la jurisprudencia norteamericana no es tan clara ni uniforme al determinar el efecto que

---

[20] En Pagán Hernández v. U.P.R., supra, específicamente en el escolio número 6, señalamos varias excepciones a la aplicación de la doctrina de cosa juzgada. Estas no se refieren a casos que están permeados de consideraciones de orden público.

tiene la denegatoria de una intervención con relación a la defensa de cosa juzgada. Por ejemplo, en Enterprise Bank v. Magna Bank of Missouri, 92 F.3d 743 (1996), el Octavo Circuito resolvió que el no apelar la denegatoria de una intervención no siempre excluye la posibilidad de que una parte presente una nueva acción que levante las mismas reclamaciones subyacentes en la moción de intervención. Esto quiere decir que cosa juzgada sería la intervención en sí, más no cualquier otro derecho que se pudiera haber reclamado.

En conclusión, Román Torres es y era una parte indispensable en cualquier procedimiento para anular la subasta y venta judicial. Contra él, cualquier determinación sobre este particular no podía ser final y firme, y no podía tener la naturaleza de cosa juzgada. Después de todo, si una parte es o no indispensable en un pleito no depende de si el mismo se resuelve o no a su favor. Una parte resulta ser indispensable si tuviere un interés común y sin cuya presencia no puede adjudicarse la controversia.[21] En el Caso I, el tribunal de instancia no podía anular la subasta y por ende la venta judicial sin la presencia en el pleito del comprador en venta judicial, Román Torres. A lo sumo, lo que el tribunal podía resolver era si procedía o no la intervención. La resolución emitida en el Caso I no constituye cosa juzgada para el Caso II en cuanto a la titularidad de la propiedad objeto de la controversia. No procedía, pues, la desestimación de la demanda presentada por Aponte Caratini. El Tribunal de Circuito actuó

---

[21] La Regla 16.1 de Procedimiento Civil dispone:

> Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando la persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada.

De otra parte la Regla 16.2 dispone:

> El tribunal podrá ordenar la comparecencia de aquellas personas sujetas a su jurisdicción, que a pesar de no ser partes indispensables, deban ser acumuladas si se ha de conceder un remedio completo a las personas que ya sea parte en el pleito.

correctamente al confirmar la resolución dictada por el foro de instancia y devolver el caso a dicho tribunal para que continuara con los procedimientos.

Por las razones antes expuestas, se confirma la sentencia emitida por el Tribunal de Circuito de Apelaciones.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río emitió opinión disidente.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

René Aponte Caratini

    Demandante-Recurrido

       v.

Luis G. Román Torres y Otros       CC-95-131       Certiorari

    Demandados-Recurrentes

Sala Especial integrada por la Juez Asociada señora Naveira de Rodón, como su presidenta y los Jueces Asociados señores Fuster Berlingeri y Corrada del Río.

Opinión Disidente emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 6 de mayo de 1998.

La parte recurrente, Luis G. Román Torres y otros, nos solicita que revisemos la Sentencia dictada el 10 de octubre de 1995 por el Tribunal de Circuito de Apelaciones. En dicha sentencia se dictaminó que por no haberse adjudicado previamente la controversia actualmente planteada ante el Tribunal de Primera Instancia en el caso KCD 90-0331, no es de aplicación la defensa de cosa juzgada. Entendemos que el tribunal a quo erró en su dictamen; por no resolver así la mayoría, disentimos.

I

En un caso seguido por José A. Medina Marrero, posteriormente substituido por American Realty Investment Corp., en contra de Iris Nereida Alicea

Aponte, Civil Número KCD 90-0331 sobre Cobro de Dinero, se dictó sentencia en rebeldía el 3 de agosto de 1990 condenando a la demandada a pagar la cantidad de $12,000.00, intereses, costas, gastos y honorarios de abogado. El 18 de septiembre de 1991 se presentó una orden de anotación de embargo en el Registro de la Propiedad sobre el referido inmueble como parte de los trámites para la ejecución de la sentencia. El embargo se anotó el 24 de septiembre de 1991. Mientras tanto, el 10 de junio de 1991, la Sra. Alicea Aponte vendió la propiedad objeto de la anotación posterior de embargo al Sr. René Aponte Caratini mediante escritura pública. El 10 de junio de 1992 se presentó para inscripción en el Registro de la Propiedad la compraventa del inmueble a favor del señor Aponte Caratini. El 5 de octubre de 1992 se celebró una subasta pública en ejecución de sentencia mediante la cual se vendió judicialmente la propiedad al Sr. Román Torres y esposa.

El 6 de octubre de 1992 el Sr. Aponte Caratini radicó Moción para intervenir en el pleito KCD90-0331. A ello se opuso American Realty alegando que la compraventa otorgada por la señora Alicea Aponte a favor del señor Aponte Caratini era una a la cual le acompañaba una presunción de haberse celebrado en fraude de acreedores por haber sido efectuada luego de haber recaído la sentencia[22] en contra de la vendedora, y otra presunción de fraude por haberse enajenado a título gratuito ya que el notario otorgante del contrato no dio fe de la entrega del precio de la compraventa.[23] Solicitó que se declarase la nulidad del contrato. El 21 de diciembre de 1992 el tribunal de instancia le notificó una orden al Sr. Aponte Caratini para que, en el término de 15 días desde la notificación de la orden, replicara a las alegaciones de la parte demandante, lo que

---

[22]"Art. 1249. Contratos con presunción en fraude de acreedores.

Se presumen celebrados en fraude de acreedores todos aquellos contratos por virtud de los cuales el deudor enajenare bienes a

Continúa...

1...continuación

título gratuito. También se presumen fraudulentas las enajenaciones a título oneroso hechas por aquellas personas contra las cuales se hubiere pronunciado antes sentencia condenatoria en cualquier instancia, o expedido mandamiento de embargo de bienes."

[23]Según lo resuelto en *Lebrón v. Fresno & Co., Et AL.*, 39 D.P.R. 901 (1928), y *Ledesma Marrero v. Ledesma Marrero*, 84 D.P.R. 167 (1961).

aquél nunca hizo. El 10 de febrero de 1993 el Tribunal emitió una orden denegando la moción de intervención, fundamentando la misma el 28 de abril de 1993.

En su dictamen, el tribunal sentenciador dispuso que al título de compraventa le acompañaban las presunciones mencionadas y que las mismas no fueron rebatidas por el Sr. Aponte Caratini. Resolvió que la transacción de compraventa "se hizo en fraude de acreedores y por tanto el interventor carece de título alguno."

Aponte Caratini solicitó la reconsideración por el tribunal, pidiendo que se celebrase una vista evidenciaria en la que se le permitiera refutar las aludidas presunciones.

Arguyó que la parte demandante no alegó haber sido perjudicada por la enajenación ni tampoco la ausencia de otro recurso legal para hacer efectivo su crédito, y que ambos son requisitos esenciales de la acción pauliana. Impugnó además bajo el fundamento de que había sido privado de su propiedad sin el debido proceso de ley. La moción fue declarada no ha lugar, sin expresión de fundamentos. El Sr. Aponte Caratini acudió a este Tribunal mediante un recurso de certiorari, el cual fue denegado por craso incumplimiento con las disposiciones de nuestro reglamento y por no haber acreditado nuestra jurisdicción.

El 28 de septiembre de 1994 el Sr. Aponte Caratini radicó ante el Tribunal de Primera Instancia una acción independiente, caso Núm. KAC94-1429, de Nulidad de Subasta y Venta Judicial, en contra de Román Torres y su esposa, de Medina Marrero y de American Realty. La parte demandada Román Torres y esposa, reconvino por los daños alegadamente sufridos al no poder disponer de su propiedad y posteriormente radicó una moción de sentencia sumaria en la que alegó que los planteamientos presentados fueron previamente adjudicados en el caso KCD-90-0331, por lo que procedía la defensa de cosa juzgada.

En su oposición a la moción de sentencia sumaria, la parte demandante señaló que no estaba en controversia la existencia del caso anterior ni que

él era el titular registral del inmueble objeto de la controversia, sino que meramente tocaba dirimir la procedencia en derecho de dictar sentencia sumaria y la aplicabilidad de la doctrina de cosa juzgada[24]. La moción de sentencia sumaria fue declarada no ha lugar. Se solicitó la reconsideración del dictamen, y el Tribunal de instancia no emitió resolución alguna, por lo que se consideró rechazada de plano.

La parte demandada recurrió al Tribunal de Circuito de Apelaciones mediante un recurso de Certiorari en revisión de la resolución dictada. En el mismo expuso similares planteamientos de derecho a los discutidos en su moción de sentencia sumaria.

El Tribunal de Circuito de Apelaciones confirmó al tribunal recurrido mediante Sentencia de 10 de octubre de 1995, cuya notificación fue archivada en autos el 25 de octubre de 1995. Fundamentó su sentencia en que, al nunca haberse alegado ni resuelto en el primer caso lo relativo a la ausencia de otros medios para que el acreedor hiciera valer su acreencia ni sobre el perjuicio causádole por la enajenación y siendo estos requisitos esenciales de la acción pauliana, la controversia trabada en el presente pleito nunca había sido concluyentemente adjudicada, por lo que no es de aplicación la defensa de cosa juzgada ni su vertiente de impedimento colateral por sentencia. Señaló, asimismo, que en ocasiones los tribunales se han negado a aplicar en forma inflexible la defensa de cosa juzgada cuando hacerlo derrotaría los fines de la justicia, y que el caso de

---

[24]La cual alega no procede por razón de que no existe la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron y porque se le privó de su propiedad sin el debido proceso de ley.

marras resultaba apropiado para someterlo a ese balance y escrutinio. Dispuso que, a pesar de que los hechos esenciales del caso, según alegados por los demandados, no estaban en controversia, como cuestión de derecho no procedía dictar sentencia sumaria a su favor.

En su recurso ante nos, presentado el 14 de noviembre de 1995, la parte recurrente señala:

> A.   Erró el Tribunal de Circuito de Apelaciones, al
>      determinar que no era de aplicación la doctrina
>      de cosa juzgada y/o impedimento colateral por
>      sentencia.

> B.   Erró el Tribunal de Circuito de Apelaciones, al
>      confundir la acción rescisoria pauliana con la
>      de nulidad radical y absoluta por simulación.

Alega la parte recurrente que la presunción establecida en el caso KCD 90-0331 fue una de simulación absoluta,[25] y que al no ser rebatida según ordenado por el tribunal, se dictó la resolución denegando la intervención y resolviendo que el recurrido Aponte Caratini carecía de título alguno. Arguye que no son de aplicación los fundamentos esgrimidos por el tribunal recurrido en contra de la aplicación de la doctrina de impedimento colateral por sentencia en cuanto los requisitos de la acción pauliana no son los mismos que los de una acción de nulidad.

La parte recurrida, en su objeción a que se revoque la sentencia, alega que lo resuelto en el caso KCD 90-0331 fue la rescisión del contrato de compraventa y no su nulidad. Expone que no compareció dentro del término concedídole por el juez de primera instancia porque no tenía que hacerlo. En primer lugar, sostiene que se pretendió convertir el incidente de intervención en una acción rescisoria. En adición, el título que reclamaba la persona a quien se le adjudicó la subasta descansaba en una anotación de

_____

[25]Primero, porque la escritura se otorgó cuando ya había mediado sentencia condenatoria en contra de la señora Alicea, y segundo porque no existía causa en

embargo que fue hecha con posterioridad a la fecha de adquisición del título de propiedad por el recurrido. Entiende éste que su título no podía ser cancelado mediante una oposición a su intervención; que era necesaria la radicación de una demanda; que la resolución fue dictada sin jurisdicción y que se le privó de su propiedad sin el debido proceso de ley. Veamos.

## II

La defensa de cosa juzgada figura en nuestro Código Civil en el capítulo relativo a la prueba de las obligaciones, y específicamente, en la sección relativa a las presunciones. El artículo 1204 del Código Civil, 31 L.P.R.A. sec. 3343, dispone que:

"...Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.

Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron..."

El efecto de la doctrina de cosa juzgada, cuando ésta aplica, es que la sentencia dictada en un pleito anterior impide que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción anterior. Véase *Pagán Hernández v. Universidad de Puerto Rico*, 107 D.P.R. 720 (1978)*; Mercado Riera v. Mercado Riera*, 100 D.P.R. 940 (1972); *Isaac Sánchez v. Universal C.I.T. Credit*, 95 D.P.R. 372 (1967); *Capó Sánchez v. Srio. de Hacienda*, 92 D.P.R. 837 (1965); *Riera v. Pizá*, 85 D.P.R. 268 (1962); *Sastre*

---

cuanto se alegaba el recibo de una cantidad de dinero con anterioridad al otorgamiento

*v. Cabrera* , 75 D.P.R. 1 (1953); *Manrique Gil v. Goffinet*, 37 D.P.R. 336 (1927).

En términos generales, puede afirmarse que la regla está fundada en consideraciones de necesidad y orden público; el interés del Estado en que se le ponga fin a los litigios, que no se eternicen las cuestiones judiciales; en la conveniencia de dar la debida dignidad a los fallos de los tribunales, y la deseabilidad de que no se someta en dos ocasiones a un ciudadano a las molestias que supone litigar la misma causa. Véase Sentencia del Tribunal Supremo de España de 5 de julio de 1924, Jurisp. Civil III, tomo 163, pág. 504; *Pagán Hernández v. Universidad de Puerto Rico*, supra; *Lausell Marxuach v. Díaz de Yañez*, 103 D.P.R. 533 (1975); *Pérez  v. Bauzá*, 83 D.P.R. 220 (1961); De León y Olarieta, **Observaciones filosófico-jurídicas acerca de la autoridad de cosa juzgada**, 44 Rev. Gen. de Leg. y Juris. 5, 15-22 (1874).

La doctrina en cuestión es parte de nuestro Derecho Civil y es innecesario, excepto para fines comparativos, acudir a otras fuentes para su análisis. Véase *Lausell Marxuach v. Díaz de Yañez*, supra; *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753 (1981); *Ramos González v. Félix Medina*, 121 D.P.R. 312 (1988). Sin embargo, nuestra jurisprudencia no ha vacilado en acudir a distintas fuentes para interpretar la doctrina de cosa juzgada, recurriendo tanto a los textos españoles como a las fuentes de derecho común, aún cuando difieren en varios aspectos.

Estas diferencias han permitido el desarrollo de una vertiente de la cosa juzgada, el impedimento colateral por sentencia.  Aplica ésta cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida realmente y se determina por una sentencia válida y final aunque estén envueltas causas de acción distintas. Véase *Vidal v. Monagas*, 66 D.P.R 622 (1946); *Long Corporation v. Tribunal de Distrito*, 72 D.P.R. 788 (1951); *Fuentes v. Tribunal de Distrito*, 73 D.P.R. 959 (1952); *Pereira v. Hernández*, 83 D.P.R. 162 (1961); *A & P Gen. Contractors v. Asoc. Caná*, supra.

---

de la escritura.

De la propia fuente estatutaria de la doctrina surgen los requisitos constitutivos de *res judicata*: que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

Teniendo presente los principios generales aplicables de nuestra jurisprudencia, veamos los hechos del recurso ante nos para determinar si, en efecto, concurren los elementos necesarios. Lo primero que se pone de manifiesto es que ciertamente está presente el requisito de identidad, esto es, identidad de cosas, el "objeto o materia sobre la cual se ejercita la acción". *Lausell Marxuach v. Díaz de Yáñez*, <u>supra</u>, pág. 535. La cosa o el objeto es el contrato de compraventa otorgado entre la Sra. Alicea Aponte y el Sr. Aponte Caratini y la propiedad mediante éste vendida, la cual es la misma que fuera ejecutada judicialmente en el primer procedimiento, y cuya ejecución es impugnada por el Sr. Aponte Caratini. Cualquier duda al respecto se disipa al aplicar la regla de Lacoste para determinar si hay o no identidad de objeto: "[La hay si] estatuyendo sobre el objeto de una demanda, el Juez está expuesto a contradecir una decisión anterior afirmando un derecho nacido o naciente o un derecho afirmado por esta decisión precedente. Si no puede estatuir más que exponiéndose a esta contradicción hay identidad de objeto..." E. Jiménez Asenjo, **Sobre el Alcance Real de la Cosa Juzgada**, 184 Rev. G. de Leg. y Juris. 63, 73, nota 1 (1948).

Asimismo no existe duda de que está presente el requisito de identidad de causas. Recuérdese que causa "es el motivo de pedir". Quintus Mucius Scaevola, **Código Civil**, 2da Ed., 1958, T. XX, pág. 535. Se constituye el requisito de identidad de causas "cuando la nueva acción estuviera como embedida en la primera, o fuese consecuencia inseparable de la misma". José María Manresa y Navarro, **Comentarios al Código Civil Español**, Tomo VIII, Vol. 2, Sexta Edición, 1967, págs. 303-04. Véase *Mercado Riera v. Mercado Riera*, <u>supra</u>; *Acevedo Santiago v. Western Digital Caribe, Inc.*, 140 D.P.R. _____, 96 J.T.S. 42. Para cumplir con este requisito "basta que se

refiera al mismo asunto, aunque en el uno se aborde totalmente y sólo parcialmente en el otro". Scaevola, Op. Cit, a la pág. 534. Véase *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 10, 92 J.T.S. 102; *Acevedo v. Western Digital Caribe, Inc.*, supra. Manresa señala que: "Para los efectos de la cosa juzgada, la palabra **causa** tiene un sentido que no es de razón o motivo de un contrato o acto jurídico. Significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes." (Enfasis en el original.) Manresa, Op.cit., pág. 301. Así, el Tribunal Supremo de España ha dictaminado que "la causa equivale a un fundamento o razón de pedir, siendo la acción mera modalidad procesal que es necesario ejercitar para que aquélla tenga efectividad en juicio...". Sentencia de 30 de octubre de 1965; véase *Worldwide Food Distributors, Inc. v. Colón Bermúdez*, 93 J.T.S. 114.

Tanto en la presente acción, como al solicitar la intervención en la primera acción, que fue denegada, el motivo de pedir, el fundamento capital, el origen de las acciones y el asunto al que se refieren son los mismos. Se cuestiona la validez del contrato de compraventa mediante el cual el Sr. Aponte Caratini alega haber adquirido la propiedad ejecutada. Habiendo identidad de causa, resulta innecesario considerar la cuestión de impedimento colateral por sentencia. Véase *A & P Gen. Contractors v. Asoc. Caná,* supra.

En cuanto a la identidad de las personas basta señalar que son las mismas partes las que nuevamente se enfrentan sobre el mismo asunto. Apunta Manresa "La calidad en que las partes litiguen en los pleitos no puede confundirse con la respectiva situación procesal de actor o reo, porque entonces el demandado en el primer pleito, con sólo demandar él luego podría renovar la cuestión ya fallada. La calidad en que las partes lo fueron se refiere a su relación con los derechos y acciones que ejercitan, y así cabrá que renueve un litigio el que por derecho propio reclamó una

cosa, si luego lo hace como mandatario, cesionario o heredero de otra persona." Op. cit., pág. 311.

Vistos los requisitos doctrinales de la defensa, forzoso es concluir que todos están presentes en el caso de autos. Aponte Caratini está reclamando el mismo derecho, por los mismos fundamentos, a las mismas personas y en la misma calidad que lo hizo en el caso KCD 90-0331. Nos parece claro que entre el actual pleito KAC 94-1429 y el proceso de intervención del caso KCD 90-0331 existe identidad de partes, de cosa y de causa de acción. La controversia realmente quedó trabada en cuanto al derecho del interventor como alegado dueño de la finca en cuestión.

III

El presente recurso plantea una cuestión interesante en cuanto, técnicamente, Aponte Caratini no fue originalmente parte en el primer pleito. Sin embargo, debemos destacar que no es lo resuelto originalmente en el caso KCD 90-0331 lo que se le intenta oponer como cosa juzgada. Fue al denegársele su moción de intervención que el juez de primera instancia dictaminó la carencia de titularidad por parte de Aponte Caratini. Resuelve la mayoría que, por no haber sido parte Aponte Caratini en el primer pleito, no se cumple con el requisito de identidad de partes y, por tanto, no es de aplicación la defensa de cosa juzgada. No estamos de acuerdo.

Debemos recordar que "...en Puerto Rico tenemos la situación particular de que rigen dos sistemas de derecho, uno en el campo sustantivo, y otro de índole procesal, producto de la influencia del derecho anglosajón proveniente de los Estados Unidos. Con miras a crear un derecho autóctono, nuestra posición siempre ha sido aprovechar los mejores elementos de ambos sistemas (sin menoscabo de acudir a otras latitudes), armonizarlos y hacerlos formar parte de nuestro ordenamiento jurídico." *A & P General Contractors, Inc. v. Asoc. Caná*, supra, pág. 762. A pesar de que nuestra doctrina en el ámbito de la cosa juzgada proviene del derecho

civil, nuestras reglas de procedimiento civil son, en gran parte, traídas de las federales.

En *Ninlliat v. Suriñach Et Al.*, adoptamos la posición de que [...] "Cuando algún hecho fundamental o cuestión sustancial para la determinación de ambas acciones ha sido resuelto en un pleito anterior, y el mismo hecho o cuestión está otra vez en controversia entre las mismas partes, el fallo del mismo en el primer pleito será concluyente, si se presentare en debida forma, de la misma cuestión en el último pleito, sin tener en cuenta la cuestión de **...si es o no la misma forma de procedimiento.**" (Enfasis nuestro).

"Para invocar con éxito la defensa de cosa juzgada precisa no sólo la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron, sí que también que la sentencia anterior por su naturaleza o por disposición de la ley resuelva definitivamente el asunto." *Muñoz v. Pardo*, 68 D.P.R. 612, 618 (1948). Véase también *Meléndez v. Cividanes*, 63 D.P.R. 4 (1944); *Balasquide v. Luján*, 45 D.P.R. 563, (1933).

La Regla 21.1 de las de Procedimiento Civil, al entender en las intervenciones como cuestión de derecho dispone que:

> *"Mediante oportuna solicitud, cualquier persona tendrá derecho a intervenir en un pleito (a) cuando por ley o por estas reglas se le confiere un derecho incondicional a intervenir; o (b) cuando el solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pudiere de hecho quedar afectado con la disposición final del pleito."*

Como puede observarse, la citada disposición le impone límites a la intervención. El solicitante debe reclamar algún derecho o interés en la propiedad o asunto objeto del litigio y debe demostrar que tal derecho o interés puede, de hecho, quedar afectado por la disposición final del pleito. La Regla obliga a utilizarse un criterio de orden pragmático. **¿Existe de facto un interés que amerite protección?** ¿Quedaría afectado, como cuestión práctica, tal interés por la ausencia del interventor en el caso? El análisis puede variar de pleito a pleito. En el fondo, la decisión depende del equilibrio a lograrse en la situación específica entre los

valores en conflicto: el interés en la economía procesal representada por la solución en un solo pleito de varias cuestiones relacionadas entre sí y el interés en evitar que los pleitos se compliquen y eternicen innecesariamente. Véase Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, **Federal Practice and Procedure**, Tomo 7A, sec. 1904, págs. 483, 509. y *Chase Manhattan Bank v. Nesglo, Inc.*, 111 D.P.R. 767 (1981). Es evidente que un tribunal al cual se le solicita que reconozca el derecho de intervenir en un pleito ante su consideración tiene que examinar y dirimir la existencia del interés reclamado por el peticionario. Así lo hizo el juez de primera instancia al denegarle la intervención al Sr. Aponte Caratini, quien evidentemente era parte en dicho proceso de intervención.

## IV

En los Estados Unidos se le ha dado el efecto de cosa juzgada a las denegatorias de intervención como cuestión de derecho cuando en éstas se ha resuelto una controversia legal que se levanta posteriormente en una acción judicial independiente. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743 (1996); *James v. Wampanoag Tribal Council*, 499 N.E.2d. 1213 (1986); *Unites States v. Harris*, 733 F.2d. 994 (1984); *Reed v. Frey*, 458 P.2d. 386 (1969); *Brotherhood of Loc. Fire & Eng. v. Seaboard Coast Line R. Co.*, 413 F.2d. 19 (1969); *Cheyenne River Sioux Tribe of Indians v. United States*, 338 F.2d. 906 (1964), cert. Denied 382 U.S. 815 (1965). El fundamento esbozado para darle tal efecto es que la parte afectada, al no utilizar su derecho de apelación sobre dicha determinación, está posteriormente impedida de relitigar el mismo asunto. La doctrina prevaleciente en la jurisdicción federal es que son apelables las denegatorias de las mociones de intervención en aquellos casos en que la intervención se solicita como cuestión de derecho, mas no cuando se solicita como una permisible. Cora M. Thompson, **Cyclopedia of Federal Procedure**, Third Edition, Vol. 7, págs. 83-85; **Moore's Federal Practice**, Volume 6, Third Edition, págs. 85-91; Wright and Miller, <u>Op. cit.</u>, Vol. 7C, sec. 1923, págs. 507-518; *Brotherhood of R. Trainmen v. O.R. Co.*, 331 U.S. 519 (1947).

A pesar de que estas órdenes son de naturaleza interlocutoria, por lo que se podría entender que el tribunal revisor sólo tendría que atender estos recursos discrecionalmente[26], se ha interpretado que una orden denegando una moción de intervención como cuestión de derecho "...is final as to [the applicant],...", por lo que existe un derecho de apelación para revisarlas.[27] *Williams v. Katz*, 23 F3d. 190 (1994); *Strinfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987); *Brotherhood of R. Trainmen v. O.R. Co.*, supra; Thompson, Op. cit., págs. 83-85; Moore, Op. cit., Volume 6, Third Edition, págs. 85-91; Wright and Miller, Op. cit., Vol. 7C, sec. 1923, págs. 507-518.

Debemos destacar que el dictamen denegando la moción de intervención en el caso KCD-90-0331 es una sentencia y no una resolución. La Regla 43.1 de las de Procedimiento Civil, define el término "sentencia" como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse o solicitarse revisión. En consonancia con lo anterior, en reiteradas ocasiones hemos resuelto que si un tribunal dicta una resolución, pero ésta verdaderamente pone fin a la controversia entre las partes, la referida resolución constituye una sentencia final de la cual puede interponerse recurso de apelación. *Banco Santander P.R. v. Fajardo Farms Co.*, Op. del 28 de junio de 1996, 141 D.P.R. 31, 96 J.T.S. 100; *A.F.F. v. Tribunal*, 93 D.P.R. 903 (1967); *Arroyo v. Quiñones*, 77 D.P.R. 513 (1954). Para enmarcar un dictamen judicial dentro de las clasificaciones de resolución o sentencia se debe evaluar sus efectos jurídicos y no sólo su denominación.

En *Rodríguez v. Tribunal Municipal*, 74 D.P.R. 656, 664 (1953), explicamos la diferencia entre una resolución y una sentencia. Señalamos allí lo siguiente:

> "No es muy difícil concluir que existe una diferencia conceptual categórica entre una `resolución´ y una `sentencia´. Ninguna de las dos constituye un término genérico dentro del cual pueda entenderse comprendida la otra específicamente. Una resolución pone fin a un incidente dentro del proceso judicial, mientras una

---

[26]28 U.S.C.A. 1292 (b).
[27]28 U.S.C.A. 1291.

sentencia pone fin a la controversia entre las partes mediante una adjudicación final."

La denegatoria a la moción de intervención puso fin a las controversias relativas a la validez del contrato otorgado entre la Sra. Alicea Aponte y el Sr. Aponte Caratini y el interés propietario de éste sobre la propiedad ejecutada. Es evidente que se trata de una sentencia de la cual podía apelar el Sr. Aponte Caratini.[28]

De acuerdo al derecho anteriormente enunciado, concluimos que los fundamentos esbozados por el tribunal de primera instancia en su denegatoria tienen fuerza de cosa juzgada en el presente pleito. No cabe duda alguna sobre el hecho de que el dictamen del juez de primera instancia fue uno considerado y fundamentado a los efectos de decretar la carencia de título válido por parte del Sr. Aponte Caratini. Basta una somera lectura de dicho dictamen para así confirmar este hecho. El Juez de primera instancia fundamentó su decisión estableciendo que:

> [...]"Cuando la parte interventora adquiere el título de propiedad el día 10 de junio de 1991, hacía nueve (9) meses con diez (10) días, que el Tribunal había dictado sentencia condenando a la parte demandada al pago de la suma reclamada por los demandantes. Es por ello que al título de propiedad del interventor lo acompaña la presunción de haberse transmitido fraudulentamente, y corresponde a él rebatir tal presunción.
>
> Como si lo anteriormente fuera poco, en la escritura de compraventa del interventor, el notario autorizante no dio fe de que en su presencia el comprador pagó el importe de la compraventa. [...]
>
> Como hemos visto, corresponde al interventor acreditar que efectuó el pago del precio de la compraventa. Este Tribunal mediante orden fechada 8 de enero de 1993, declaró con lugar la moción de la parte demandante titulada "Moción Solicitando Se Paralice Todo Este Caso, Excepto lo Ordenado por el Tribunal el Día 19 de Noviembre de 1992", en la que en el apartado tercero de la súplica solicitó que se le concediera al interventor el plazo de quince días para presentar prueba al Tribunal que derrotara la presunción de que su título es fraudulento. Esta orden fue notificada el 15 de enero de 1993, y transcurrió el término de quince (15) días  sin que el interventor anunciara y presentara la

---

[28]Véase la Opinión de Conformidad emitida por el Juez suscribiente a la cual se unieron el Juez Presidente señor Andréu García y el Juez Asociado señor Fuster Berlingeri y la Opinión Concurrente del Juez Asociado señor Negrón García en *Progressive Finance & Investment Corp. v. L.S.M. General Construction, Inc.*, Sentencia de 4 de febrero de 1998, 98 J.T.S. 8. Allí la situación fáctica era similar a la del presente caso. Los cuatro jueces que fundamentaron su voto concurrieron en la evaluación concluyente de que la denegatoria de la moción de intervención era, en efecto, una sentencia.

prueba que destruyese esa presunción. Por lo que al día de hoy el título se presume en fraude de acreedores. [...]

Por lo anteriormente expresado al título de interventor también lo acompaña la presunción de ser en fraude de acreedores, y habiendo tenido amplia oportunidad la parte interventora de poder rebatir esta presunción de ley y no haberlo hecho, **se resuelve que la transacción de compraventa en que el interventor adquirió título se hizo en fraude de acreedores y por tanto el interventor carece de título alguno.**[...]"

El interés propietario del recurrido sobre la finca embargada y vendida ya ha sido considerado y adjudicado previamente por un tribunal de justicia. Esa adjudicación es, al día de hoy, final y firme.

Poco importa si la actuación del juez sentenciador fue o no correcta o si los fundamentos esbozados por éste son correctos. La defensa de res judicata puede invocarse aunque los fundamentos de la sentencia sean erróneos, siempre que se hubiera dictado con jurisdicción y en ausencia de fraude. *Bolker v. Tribunal Superior*, 82 D.P.R. 816 (1961). Como señala Manresa: "... el fundamento de la cosa juzgada no está en una pretensión de infalibilidad en el juzgador, ni menos en el intento de ocultar sus errores, sino que se encuentra en la esencia misma de la resolución judicial, que no merecería tal nombre ni tendría fuerza y resultado, si no se fortaleciera de ese modo. Es por tanto, una consecuencia directa de la autoridad necesaria al fallo, y en un orden eminentemente práctico tiene el fundamento indiscutible de que sin esa fuerza atribuida a lo juzgado, los pleitos nunca tendrían fin . . . ." Manresa, Op. cit., Tomo VIII, vol. 2, Madrid, ed. 1967, pág. 279.

El Sr. Aponte Caratini se encuentra impedido de relitigar el mismo asunto mediante acción impugnatoria del proceso de subasta seguido para vender la propiedad en controversia. Debió utilizar el mecanismo de apelación que tenía disponible para revisar la sentencia dictada. Se equivoca la mayoría al dictaminar que el dictamen que denegó la intervención no es una sentencia.

Por los fundamentos antes expuestos, disentimos.

BALTASAR CORRADA DEL RÍO
Juez Asociado