Cordero, Juez Ponente
*1133 TEXTO COMPLETO DE LA SENTENCIA
El 7 de marzo de 2003, los codemandados apelantes Dr. Alberto Mendoza Vallejo y otros (en adelante, los codemandados) presentaron recurso de Apelación y nos solicitaron revisión de la Sentencia Sumaria Parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI) emitida el 31 de enero de 2003 y notificada el 6 de febrero de 2003. En la misma, dicho foro desestimó la demanda de coparte presentada por los codemandados contra el Colegio de Médicos Cirujanos de Puerto Rico (en adelante, “CMCPR”) por haber sido presentada tardíamente.
Veamos los hechos del caso.
I
Para la fecha de 6 de marzo de 1997, el codemandante Dr. José C. Román de Jesús (en adelante, Dr. Román) ocupaba el cargo de Vicepresidente de la Junta de Directores (en adelante, la Junta) del CMCPR. Esa noche, en una reunión de la Junta, el Dr. Román fue cuestionado por unas alegadas declaraciones vertidas a la prensa durante unas actividades de protesta que estaba llevando a cabo el CMCPR durante el año 1996. También se le cuestionó sobre sus continuas ausencias a las reuniones de la Junta, las cuales, según él, se debían a razones de salud. Dicha actuación motivó que el Dr. Román solicitara un voto de confianza de parte de los demás miembros de la Junta. Indicó que, de no obtenerlo, presentaría su renuncia al cargo de Vicepresidente. Acto seguido, se desató una discusión entre los miembros de la Junta allí presentes, ocasionando que la reunión finalizara sin que la Junta se expresara en cuanto al voto de confianza solicitado por el Dr. Román.
Al otro día, el presidente de la Junta, el Dr. Mendoza, entendió que, debido a que la Junta no le había dado el voto de confianza al Dr. Román en la reunión del 6 de marzo de 1997, se entendía presentada la renuncia. El presidente, procedió, entonces, a consultar con su asesor legal y a discutir el asunto con los demás miembros de la Junta, obteniendo un voto por mayoría para que la renuncia fuera aceptada. Posteriormente, los miembros de la Junta suscribieron una carta de fecha 10 de marzo de 1997, donde le informaban al Dr. Román que su renuncia había sido aceptada.
No conforme con la decisión de la Junta, el 3 de abril de 1997, éste presentó ante el TPI una acción de entredicho y daños y perjuicios, en la que solicitó al tribunal ordenase a los demandados le permitieran regresar a su puesto. Posteriormente, y cumpliendo con una orden del TPI, el Dr. Román enmendó la demanda para incluir al CMCPR como parte indispensable, a los únicos fines de la parte interdictal y declaratoria de la demanda. En cuanto a la acción de daños y perjuicios, renunció a cualquier reclamo contra el CMCPR, en vista de que su propósito era únicamente responsabilizar personalmente a los directores y no a la institución como tal. El CMCPR contestó la demanda enmendada negando que la actuación de sus directores hubiera sido un acto ultra vires y alegó que la parte demandante estaba impedida de reclamarle al Colegio a base de la doctrina de actos propios.
La controversia principal en este caso giró en tomo a si la renuncia del Dr. Román había sido o no perfeccionada. Luego de una vista en sus méritos, en la que las partes tuvieron oportunidad de someter sus respectivos memorandos, el TPI, resolvió, mediante Resolución del 22 de julio de 1997 (en adelante, la Resolución), que la Junta no tenía facultad para aceptar la renuncia debido a que la condición suspensiva establecida por el Dr. Román al decir “si no me dan el voto de confianza”, nunca se perfeccionó. Añadió que, por tal razón, al no cumplirse la condición, no surgió por parte del demandante la obligación de renunciar a su cargo. *1134 Cónsono con dicha determinación, el TPI ordenó a la Junta y a.los miembros de ésta a que permitieran al demandante incorporarse otra vez a su posición como Vicepresidente de dicho cuerpo. En dicha resolución, ese foro, a su vez, ordenó que las reclamaciones de daños y perjuicios continuaran ventilándose por la vía ordinaria.
Así las cosas, el 13 de abril de 1999, la nueva administración del CMCPR objetó la factura por servicios legales de la representación legal de los directores de la Junta, aduciendo que la resolución del TPI resolvió que la actuación de éstos había sido ultra vires, y que, por lo tanto, el Colegio no venía obligado a sufragar dichos gastos. El 14 de septiembre de 2000, luego de solicitar permiso al TPI, los codemandados presentaron demanda de coparte contra el CMCPR. Dicha institución, por su parte, presentó oposición a la demanda de coparte, solicitando al TPI revocar el permiso concedido para presentar la misma, bajo el argumento de que la demanda estaba prescrita.
Posteriormente, el CMCPR presentó una Moción de Desestimación, en la que solicitó al TPI desestimara la demanda de coparte por, alegadamente, estar prescrita al haber sido presentada transcurrido más de un año desde que esa institución le informara a la representación legal de los directores que no continuaría pagando sus honorarios.
Por otra parte, el 1 de marzo de 2002, los codemandados solicitaron la desestimación de la demanda enmendada, en la que alegaron que el demandante, por sus propios actos, había renunciado a su causa de acción.
Con fecha del 31 de enero de 2003, notificada el 6 de febrero de 2003, el TPI emitió Sentencia Sumaria Parcial desestimando la demanda de coparte por estar prescrita. Dicho foro resolvió que el término prescriptivo de un año para presentar esta demanda había comenzado a decursar el día 13 de abril de 1999, fecha en que el CMCPR le informó a los representantes legales de los directores que no continuaría pagando sus honorarios profesionales, por lo que dicho término expiró el 13 de abril de 2000.
Por no estar conformes con dicha determinación, los codemandados acudieron ante nos mediante recurso de apelación, en el que alegaron la comisión de los siguientes errores:

“1) Erró el Honorable Tribunal de Primera Instancia al considerar que la anterior juez había resuelto la cuestión ultra vires, cuando la resolución en ningún momento la discutió y ni tan siquiera aparece la palabra ultra vires en la decisión.

2) Erró el Honorable Tribunal de Primera Instancia al considerar que una determinación ultra vires es sinónimo de negligencia bajo el Art. 1802.

3) Erró el Honorable Tribunal de Primera Instancia al no considerar que el Colegio ratificó los actos de sus directores cobijándolos dentro de los parámetros de sus funciones y que la doctrina de actos ultra vires no aplicaba.

4) Erró el Honorable Tribunal de Primera Instancia al desestimar la demanda contra coparte, ya que no consideró que entre cocausantes solidarios la prescripción se interrumpió con la demanda inicial.

5) Erró el Honorable Tribunal de Primera Instancia al no considerar que la prescripción se interrumpió por los reclamos internos dentro del caso.

6) Erró el Honorable Tribunal de Primera Instancia al no adjudicar la Moción de Desestimación que fuera radicada el pasado 1 de marzo de 2002. ”

El 7 de abril de 2003, los demandantes, el Dr. José Román de Jesús y otros (en adelante, Dr. Román) *1135 presentaron Moción de Desestimación en la que nos solicitaron la desestimación del recurso de apelación presentado por los codemandados por, alegadamente, la parte haber omitido presentar copia del mismo ante el TPI. Los codemandados, por su parte, presentaron oposición a dicha solicitud. El 16 de abril de 2003, el TPI acogió una Moción en Auxilio de Jurisdicción presentada por los codemandados, solicitando la paralización de los procedimientos hasta tanto este Tribunal resolviera el recurso de apelación presentado. Así pues, quedó resuelta la controversia en cuanto a si, efectivamente, el TPI había sido notificado del recurso.
II
La obligación solidaria es aquélla en la que concurren varios acreedores (solidaridad activa) o varios deudores (solidaridad pasiva), o varios acreedores y al mismo tiempo varios deudores (solidaridad mixta), y en que cada acreedor tiene derecho a pedir, y cada deudor tiene la obligación o deber de realizar íntegramente la prestación debida. Arroyo v. Hospital La Concepción, 130 D.P.R. 596, 606-607 (1992), citando a J. Castán Tobeñas, Derecho Civil Español, Común y Foral, 10ma. ed., Madrid, Ed. Reus, 1967, T. III, pág. 107.
En materia de daños extracontractuales o culpa aquilina, el Tribunal Supremo ha resuelto que cuando sean varios quienes con sus actos u omisiones culpables o negligentes causen un daño, se obligarán solidariamente a repararlo. Torres Ortiz v. E.L.A., 136 D.P.R. 556, 564 (1994).
En el caso de las obligaciones solidarias, la interrupción de la prescripción aprovecha o perjudica a todos los acreedores y deudores. Art. 1874 del Código Civil, 31 L.P.R.A. sec. 5304. Por lo tanto, la interposición de una reclamación judicial en tiempo contra uno de los codeudores solidarios tiene el efecto de interrumpir el término prescriptivo para todos los demás. Art. 1094 del Código Civil, supra, sec. 3105; Rivera Otero v. Casco Sales, 115 D.P.R. 662, 667 (1984).
De entrada, cabe señalar que nuestra jurisprudencia proclama el principio de solidaridad entre los cocausantes del daño frente al perjudicado. Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 705-706 (1987); Soc. de Gananciales v. Soc. de Gananciales, 109 D.P.R. 279, 288 (1979); Merle v. West Bend Co., 97 D.P.R. 403, 405 (1969). Ahora bien, desde Merle v. West Bend Co., supra, se ha reconocido que el relevo de responsabilidad de un cocausante solidariamente responsable ante un demandante, no conlleva el relevo de los otros cocausantes si la intención de las partes fue relevar a ese cocausante solamente.
III
El Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, establece que el que por acción u omisión causa daño a otro, siempre que intervenga culpa o negligencia, viene obligado a reparar el daño causado. A su vez, el Artículo 1868 del Código Civil, 31 L.P.R.A. sec. 5298, establece que la acción para exigir la responsabilidad civil por las obligaciones derivadas del Artículo 1802 del Código Civil, supra, prescribe por el transcurso de un año contado a partir desde que el agraviado supo del daño. Como es sabido, la prescripción extintiva es una norma de derecho sustantivo regida por las disposiciones del Código Civil de Puerto Rico, la cual constituye una forma de extinción de los derechos debido a la inercia de la relación jurídica durante un período de tiempo determinado. Su fundamento estriba en la necesidad de poner fin a la inseguridad jurídica y a otros efectos adversos que surgen cuando posibles acciones judiciales son postergadas o dejadas pendientes. También, la prescripción extintiva persigue el fin de sancionar el abandono de los derechos por el titular de éstos porque la seguridad jurídica exige dotar de firmeza las relaciones jurídicas. Maldonado Vega v. Russé Santiago, 153 D.P.R. _, 2001 J.T.S. 17, Op. de 8 de febrero de 2001, página 834; Padín Espinosa v. Compañía de Fomento Industrial de Puerto Rico, 150 D.P.R. _, 2000 J.T.S. 44, Op. de 25 de febrero de 2000, página 759; Martínez v. Soc. de Gananciales, 145 D.P.R. 93, 101-102 (1998); Galíb Frangie v. El Vocero de P.R., 138 D.P.R. 560, 566 (1995); Vega v. J. Pérez & Cía., Inc., 135 D.P.R. 746, 753 (1994); García Aponte v. E.L.A., et al., 135 D.P.R. 137, 142 (1994).
IV
En el desarrollo de nuestro derecho, y como complemento a la doctrina de cosa juzgada, el Tribunal Supremo *1136 adoptó la doctrina de impedimento colateral por sentencia. A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 762 (1981); Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R. 533, 535 (1975). Esta doctrina se activa "cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final" y "[c]omo resultado, tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas". A & P Gen. Contractors v. Asoc. Caná, supra, página 762, citando a Vidal v. Monagos, 66 D.P.R. 622 (1946) y otros. En lo que respecta al impedimento colateral por sentencia, el Tribunal Supremo ha resuelto que “una sentencia anterior es concluyente solamente en cuanto a aquellas materias que de hecho se suscitaron y verdaderamente o por necesidad se litigaron y adjudicaron, pero no es concluyente en cuanto a aquellas materias que pudieron ser, pero que no fueron litigadas y adjudicadas en la acción anterior. ” Aponte v. Román, 145 D.P.R. 477, 498 (1998).
El impedimento colateral por sentencia presenta dos modalidades, la ofensiva y la defensiva. En su modalidad ofensiva, un demandante le impide al demandado litigar otra vez los asuntos que previamente litigó y perdió frente a otra parte. Por su parte, la modalidad defensiva surge cuando un demandado impide a un demandante que litigue otra vez asuntos que previamente litigó y perdió frente a otra parte. Fatach v. Seguros Triple S, Inc., 147 D.P.R. 889-890 (1999); A & P Gen. Contractors v. Asoc. Caná, supra, página 758. Ambas modalidades comparten el denominador común de que la parte afectada por la doctrina litigó y perdió el asunto en el pleito anterior. Fatach v. Seguros Triple S, Inc., supra, página 890.
y
Por estar íntimamente relacionados los errores 1, 2 y 3, los discutiremos conjuntamente. En los mismos, los codemandados cuestionan la determinación del tribunal sentenciador de que su actuación fue ultra vires.
El término latín ultra vires significa que “trasciende la autoridad inherente o la concedida”. I. Rivera García, Diccionario de Términos Jurídicos, New Hampshire, Ed. Equity, 1989, pág. 438. En la Resolución emitida por el TPI, el 22 de julio de 1997, luego de realizar las determinaciones de hechos, ese Tribunal llegó a la conclusión de “que los demandados no tenían facultad para aceptar una renuncia que nunca se perfeccionó”. En otras palabras, no tenían facultad para remover al demandante de su posición de Vicepresidente. Este tipo de actuación, realizado en exceso de la autoridad inherente o conocida, es lo que nuestro Tribunal Supremo ha resuelto que es un acto ultra vires. Soto v. Rivera, 144 D.P.R. 500, 514 (1997). Esto fue lo que precisamente también resolvió el foro de instancia en dicha Resolución y lo que, posteriormente, resolvió ese mismo foro en la sentencia apelada. Tal expresión no deja margen alguno para otra interpretación que no sea a la que llegó el foro.de instancia en ambos dictámenes y con la cual nosotros aquí también coincidimos.
Por otra parte, no estamos de acuerdo con la alegación de los codemandados de que por el mero hecho de que el demandante no planteó, argumentó ni presentó un memorando de derecho en cuanto a ese punto, ni mucho menos el TPI utilizó la frase ultra vires en su Resolución, quiere decir que el tribunal no haya adjudicado dicha controversia. Apoyar tal argumentación nos pondría en la difícil situación de tener que abstenemos de interpretar o refrasear lo que otros foros judiciales hayan expresado en sus dictámenes. No es necesario que se utilice específicamente el término ultra vires para que un jurista pueda entender que la actuación aludida es una de tal naturaleza.
Además, argumentan los codemandados que el demandante nunca discutió en su memorando la cuestión de ultra vires. Discrepamos en cuanto a este punto. Del inciso 5 del Memorándum de la Parte Demandante surge que el Dr. Román, efectivamente, incluyó dicha alegación en su escrito y, más aún, surge que la misma también fue hecha en la demanda enmendada al añadir el párrafo veintiuno (21). Por lo tanto, esta alegación no es novel dentro de este caso y fue presentada por los demandantes desde sus inicios.
También los codemandados señalan que, en vista de que el CMCPR ratificó los actos de sus directores cobijándolos dentro de sus funciones, la doctrina de actos ultra vires no es aplicable. Indican que el CMCPR, en *1137 sus escritos al TPI, ratificó e hizo suyas las actuaciones de sus directores, por lo que cualquier duda en cuanto a si las actuaciones de éstos fue ultra vires, quedó aclarada. No le asiste la razón.
Hemos leído las expresiones vertidas por el CMCPR en su Contestación a la Demanda Enmendada y en el Memorial de Derecho, ambos presentados ante el TPI y de los mismos surge que la contención de dicha institución es que la Junta no le concedió el voto de confianza al Dr. Román, por lo que éste renunció voluntariamente a su posición como Vicepresidente de la Junta. Estas expresiones de ninguna forma constituyen una ratificación de los actos de los directores de la Junta. La conclusión a la que llega el CMCPR en sus escritos es distinta a la que llega el TPI en su Resolución. Dicho Tribunal, a diferencia del Colegio, luego de establecer sus determinaciones de hechos, llegó a la conclusión de que la renuncia del Dr. Román a su cargo nunca se perfeccionó, puesto que la condición sobre el voto de confianza no se cumplió. 
Así, pues, concluimos que la actuación que el CMCPR ratificó partía de un hecho equivocado que no fue confirmado por el TPI. Dicho foro, luego de determinar los hechos del caso, llegó a la conclusión de que la renuncia nunca se perfeccionó porque la Junta nunca actuó sobre el voto de confianza y a base de este hecho, concluyó que la actuación de los directores fue ultra vires. Así, también lo concluyó otro juez de ese Tribunal en la Sentencia Sumaria Parcial apelada.
Concurrimos con el TPI, en términos de que lo único que pudo ratificar la Junta era la aceptación de la renuncia del Dr. Román, pero como nunca hubo tal renuncia, la ratificación per se era un acto de ratificar lo que nunca se dio. Por tanto, resolvemos que el error señalado no se cometió.
VI
En sus errores 4 y 5, los codemandados alegan que erró el TPI al desestimar la demanda de coparte por tardía. No les asiste la razón. Veamos.
Al estudiar la demanda radicada contra el Dr. Mendoza y otros en el TPI, se desprende que el Dr. Román no hizo ningún tipo de alegación de responsabilidad solidaria entre los directores de la Junta y el CMCPR. Al contrario, específicamente éste alegó en su demanda que “es una posición de principios del demandante Dr. José Román de Jesús que no interesa demandar en daños y perjuicios al Colegio de Médicos Cirujanos, del cual es fundador y vicepresidente, reiterando por la presente su contención de que los oficiales de dicho Colegio de Médicas. Cirujanos aquí demandados actuaron en forma ultra vires, esto es, fuera de sus atribuciones v autoridad como tales funcionarios del Colegio, y que por lo tanto el Colegio de Médicos y Cirujanos de Puerto Rico no tiene obligación ni responsabilidad legal alguna de responder por tales actos ilegales y torticeros.... ”. De dicha demanda enmendada también surge que la inclusión del CMCPR en la misma obedeció a una orden del TPI y a los únicos fines de la parte interdictal y declaratoria de ésta, es decir, para que el Colegio, como institución, implementara el mandato del Tribunal. 
Es, por tanto, claro que no fue la intención del Dr. Román, ni se alegó el establecer una responsabilidad solidaria entre los codemandados y el CMCPR, por lo que podemos concluir que éstos no son cocausantes solidarios_.de.los daños alegados, por el demandante. Ante esa circunstanciadlos codemandados no pueden alegar ahora que la interposición de la demanda inicial contra el Dr. Mendoza interrumpió la prescripción del término de un año para presentar la demanda contra el CMCPR.
Estamos ante dos reclamaciones separadas e independientes una de la otra. Ante esa situación, no podemos considerar a los codemandados y a CMCPR como cocausantes de los alegados daños, requisito indispensable de la solidaridad. Por lo tanto, los codemandados estaban impedidos de presentar una demanda de coparte contra el CMCPR con la intención de que esta institución le responda a ellos de la totalidad o de parte de la reclamación que en su día éstos tuvieran que pagar a los demandantes, una vez el TPI resuelva el asunto de los daños y perjuicios. El CMCPR nada tiene que aportar a lo que resta del pleito, pues ya se resolvió que la institución no *1138 responde ni del daño, ni tiene ninguna obligación con los demandantes o los codemandados, por lo que no existe razón para traerlo nuevamente al pleito.
En vista de la conclusión a la que hemos llegado de que el término de prescripción para presentar la demanda de coparte no fue interrumpido por la interposición de la demanda original por no ser los codemandados y el CMCPR cocausantes solidarios del daño, concluimos que el término prescriptivo de un año para presentar la demanda de coparte comenzó a decursar a partir del 22 de julio de 1997, fecha en que el TPI emitió la Resolución. Fue en esta fecha que los codemandados advinieron en conocimiento de que habían actuado sin facultad en ley. No fue hasta el 14 de septiembre de 2000 que la reclamación contra el CMCPR fue presentada, es decir, más de tres (3) años después de que los codemandados fueran notificados de la decisión del TPI, adjudicándoles responsabilidad por los hechos.
En el mejor de los escenarios para los codemandados, aun si tomáramos como punto de partida para la prescripción el 14 de abril de 1999, fecha en que el CMCPR les notificó por escrito que no continuaría pagando los honorarios de abogado por su representación legal, también habría que concluir que la demanda de coparte fue presentada tardíamente. En el peor de los casos, podríamos también tomar como punto de partida la fecha en que se presentó la demanda enmendada, ya que a partir de ésta los codemandados sabían que no existía ninguna reclamación contra el CMCPR y que de tener ellos algún reclamo, tendrían que hacer una reclamación independiente y, por ende, en término. Ante este cuadro fáctico, es forzoso concluir que la reclamación de los codemandados está prescrita, por lo que el TPI carecía de jurisdicción para atenderla.
A raíz de todo lo anteriormente expuesto, concluimos que no erró el TPI al desestimar la demanda de coparte presentada por los codemandados por entender que la misma fue tardía, al no quedar interrumpido el término prescriptivo con la demanda original.
Es meritorio aclarar, que aun cuando acogiéramos la teoría de los codemandados de que la prescripción fue interrumpida con la presentación de la demanda original, por ser el CMCPR cocausante solidario de los daños, la reclamación presentada, de todas maneras, no procedería, por la doctrina de impedimento colateral por sentencia. De la Resolución surge que el TPI adjudicó el asunto interdictal y dispuso que el aspecto de daños y perjuicios fuera encausado por la vía ordinaria. En cuanto al interdicto, resolvió que los codemandados actuaron sin facultad legal para destituir al Dr. Román como Vicepresidente del CMCPR y ordenó a dicha institución a reponerlo. Así, -pues,- Ies-codemandados están impedidos de relitigar un asunto que-fue previamente litigado y adjudicado en su contra. En este caso, el CMCPR, haciendo uso legítimo de su derecho, levantó como defensa el impedimento colateral por sentencia en su modalidad defensiva ante el TPI, mediante Moción en Oposición Solicitando Permiso para Radicar Demanda de Coparte. Al momento del TPI entrar a resolver la demanda de coparte presentada por los codemandados contra el CMCPR, llega a unas conclusiones de derecho a base de una decisión tomada por ese mismo foro hace más de seis años atrás y la cual ya es final y firme. Por tanto, una nueva consideración sobre los mismos hechos sería una carente de fundamento jurídico alguno y un intento de los apelantes por atacar colateralmente un hecho esencial que fue previamente dilucidado y determinado por otro foro judicial mediante sentencia válida y final. No podemos validar tal actuación.
Coincidimos, por tanto, con el foro sentenciador cuando indica en su sentencia que este fundamento de por sí, es suficiente para desestimar la demanda de coparte a favor del CMCPR, además de los ya expuestos de prescripción y la doctrina ultra vires.
VII
En cuanto al sexto señalamiento de error se refiere, los codemandados alegan que incidió el TPI al no resolver la Moción de Desestimación presentada por ellos el 1 de marzo de 2002, donde solicitaron a dicho foro desestimara la demanda enmendada. En su Sentencia Sumaria Parcial, el TPI aclara que aplazó la disposición de la desestimación solicitada por el CMCPR hasta que concluyese el proceso de descubrimiento de prueba para que *1139 la parte promovida tuviese la oportunidad de refutarla debidamente. Consideramos sabia, además de justa, la decisión tomada por el TPI y decidimos no intervenir con ella, puesto que la misma cae dentro de la autoridad discrecional que tienen los tribunales para conducir los procesos judiciales. En consecuencia, concluimos que el alegado error no fue cometido.
VIII
Por los fundamentos antes expresados, confirmamos la Sentencia apelada.
Loa acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2004 DTA 64
1. Esta Resolución resolvió la parte interdictal y declaratoria de la demanda presentada por el Dr. Román.
2. Según surge del inciso 7, página 7 de la referida Resolución, a la página 149 del Apéndice del recurso de Apelación.
3. Véase el inciso 5, a la página 21 del Apéndice del recurso de Apelación.
4. Refiérase al Memorial de Derecho y a la página 2, inciso 14 de la Contestación a Demanda Enmendada presentada por el CMCPR, a las páginas 83-93 y página 60 del apéndice del recurso de Apelación, respectivamente.
5. Refiérase al inciso 7, página 7 de la Resolución, a la página 149 del apéndice del recurso de Apelación.
6. Véase inciso 21, página 3 de la Demanda Enmendada, a la página 56 del Apéndice del recurso de Apelación.
7. Id.
8.Esta Resolución fue confirmada por este Tribunal y declarada por nuestro Tribunal Supremo con un “No Ha Lugar Por Académica” la petición de Certiorari.