El Juez Asociado Señor Feliberti Cintrón
emitió la opinión del Tribunal.
El antiguo procedimiento de tercería, según incorporado a la actual Regla 21.5 de Procedimiento Civil de 2009 ati-nente a la intervención/[1]) nos sirve de marco para definir la discreción conferida al Tribunal de Apelaciones (TA) para decidir cuándo expedir un recurso de certiorari con-forme la Regla 52.1 de Procedimiento Civil de 2009.([2]) De igual manera, nos toca resolver si la controversia, según *314 planteada en el caso ante el foro de instancia, resultaba académica en la etapa original de los procedimientos judiciales.
1 — 1
En noviembre de 2004, el Banco Bilbao Vizcaya Argen-taría Puerto Rico (BBVAPR o el peticionario) pactó con 577 Headquarters, Corp. (577HQ) el financiamiento para la compra y remodelación de un inmueble sito en Hato Rey, Puerto Rico. Como colateral al préstamo ascendente a una cantidad en exceso de seis millones de dólares, se constitu-yeron varias hipotecas a favor del BBVAPR y se ofrecieron garantías personales de los nuevos dueños del inmueble. Igualmente, las partes suscribieron un documento titulado Assignment of Lessor’s Interest in Leases mediante el cual 577HQ cedió al BBVAPR las sumas recibidas del Departa-mento del Trabajo y Recursos Humanos de Puerto Rico (Departamento del Trabajo) en calidad de cánones de arrendamiento correspondientes a la propiedad recién adquirida.
Para la remodelación del inmueble, 577HQ contrató con Integra Group Corp. (Integra), en calidad de arquitecto, y con IG Builders Group, Corp. (IG Builders), como contra-tista general. Así las cosas, el 8 de marzo de 2010, Integra e IG Builders (los recurridos) presentaron ante el Tribunal de Primera Instancia (TPI) una Demanda sobre Incumpli-miento de Contrato, Cobro de Dinero y Daños en contra de 577HQ. Alegaron la falta de pago por sus gestiones profe-sionales con relación al referido inmueble. El 8 de septiem-bre de 2010, las partes en el pleito llegaron a un acuerdo transaccional ante el TPI que disponía de la reclamación antes mencionada. Mediante dicho convenio, 577HQ acce-dió pagar a Integra e IG Builders $2,236,325.20.
La transacción antes mencionada se incorporó en una Sentencia dictada en el caso. Habida cuenta de que 577HQ *315 no cumplió con los pagos según pactado y a solicitud de los recurridos, el TPI dictó una Orden el 30 de noviembre de 2010 para decretar el aseguramiento de la Sentencia emi-tida, mediante el embargo de bienes propiedad de 577HQ ascendentes a $2,236,325.20. La correspondiente Orden de Embargo le fue notificada al Departamento del Trabajo, en calidad de arrendatario de 577HQ, el 21 de julio de 2011.
En cumplimiento con lo decretado por el TPI, el Depar-tamento del Trabajo consignó, inicialmente, $166,613.34 en el tribunal.([3]) Por ello, los recurridos presentaron dos mociones de 19 y 26 de agosto de 2011, respectivamente, en las que solicitaron el retiro de los fondos. El TPI, mediante Orden de 8 de septiembre de 2011, declaró “ha lugar” am-bas mociones, a la vez que ordenó a la Unidad de Cuentas del TPI expedir los cheques correspondientes a favor de los recurridos por el total de $166,613.34, consignado por el Departamento del Trabajo.
El 13 de septiembre de 2011, el BBVAPR presentó una moción ante el TPI en la que cuestionó el embargo promo-vido por los recurridos. Alegó tener un derecho propietario preferente sobre los bienes embargados a 577HQ por la cesión de los cánones de arrendamiento antes mencionada. Además, solicitó al TPI que suspendiera todo desembolso de los fondos consignados por el Departamento del Trabajo hasta tanto se dilucidaran los méritos de su plantea-miento.
El 16 de septiembre de 2011, el TPI denegó la solicitud del peticionario por considerarla académica, e indicó, a esos efectos, que “los fondos consignados ya fueron dis-puestos mediante Orden de retiro el 8 de septiembre de 2011”. Apéndice de la Petición de certiorari, pág. 5.
*316 El 20 de septiembre de 2011, el BBVAPR sometió una Urgente Moción de Reconsideración y para que se Deje sin Efecto Orden de Retiro de 8 de septiembre de 2011. Me-diante la misma, solicitó al tribunal que le permitiese in-tervenir y se denegase la solicitud de orden de embargo en lo atinente a los dineros depositados judicialmente por el Departamento del Trabajo, por presuntamente tener dere-cho prioritario sobre esos fondos. En su moción, el peticio-nario le indicó específicamente al foro primario que la Or-den de 8 de septiembre de 2011 aún no se había ejecutado. Es decir, que para esa fecha todavía los cheques correspon-dientes a los dineros consignados no habían sido remitidos a la parte recurrida.
El 21 de septiembre de 2011, el TPI le solicitó a la Divi-sión de Cuentas que certificase el balance de la cuenta y el nombre de su titular. No obstante, la moción de reconside-ración de BBVAPR fue declarada “no ha lugar” el 26 de septiembre de 2011.
El 27 de septiembre de 2011, el Departamento del Tra-bajo presentó una Segunda Moción de Consignación![4]) por el total de $297,404.79.([5]) En esa misma fecha, los recurri-dos presentaron una Moción Solicitando Retiro de Fondos, Depósito por $297,404.79. No consta en el expediente que el TPI haya dispuesto de esta última solicitud. De hecho, según se deduce del Informe de Subsidiario de la Cuenta del Alguacil (Informe de Subsidiario),![6]) en el caso de epí-grafe, al 26 de octubre de 2011 aún quedaba un balance de $297,404.79 correspondiente al embargo.
Mediante Orden Enmendada, expedida por el TPI el 28 de septiembre de 2011, se transfirieron erróneamente los *317 $166,613.34, consignados por el Departamento del Trabajo en la cuenta de la Secretaría Regional, a la cuenta del Al-guacil Regional por corresponder a fondos producto de un embargo. Asimismo, surge del Informe de Subsidiario que no fue hasta el 30 de septiembre de 2011 que se expidieron dos cheques a favor de Integra e IG Builders por $166,613.34, equivalente a la totalidad del primer depósito del Departamento del Trabajo, según decretado en la Or-den de 8 de septiembre de 2011.
El 7 de octubre de 2011, el BBVAPR sometió para la consideración del TA una petición de certiorari acompa-ñada por una Moción en Auxilio de Jurisdicción. Mediante Resolución de 21 de octubre de 2011, el TA denegó la expe-dición del recurso, así como la moción en la cual se solici-taba la paralización de los procedimientos ante el foro de instancia por entender que la solicitud de intervención del peticionario era académica, una vez el tribunal a quo or-denó el desembolso de los fondos embargados. Opinó, a su vez, que el recurso no se ajustaba a ninguna de las alter-nativas jurisdiccionales provistas en la Regla 52.1 de Pro-cedimiento Civil de 2009, 32 L.P.R.A. Ap. V (Regla 52.1), como tampoco cumplía con ninguno de los criterios dis-puestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B para la expedición del auto de certiorari.
Inconforme, el BBVAPR recurrió ante este Foro donde presentó un recurso de certiorari conjuntamente con una Moción Solicitando Orden en Auxilio de Jurisdicción. Me-diante Resolución de 31 de octubre de 2011 declaramos esta última “ha lugar”,([7]) a la vez que le concedimos un término a las partes recurridas para mostrar causa por la cual no debíamos revocar la determinación recurrida.
El 21 de noviembre de 2011, los recurridos nos solicita-ron la desestimación del recurso, a la vez que presentaron *318 su Alegato en cumplimiento con nuestra Resolución. El 2 de diciembre de 2011, el BBVAPR se opuso a la deses-timación. Resolvemos.
I — I 1- — i

Moción de desestimación

La parte recurrida plantea tres argumentos como apoyo a su solicitud de desestimación. Inicialmente, aduce que el BBVAPR carecía de legitimación activa para intervenir en el caso en instancia por no tener un interés propietario que defender. En la alternativa, argumenta que como ya se ha-bía ordenado el primer desembolso de los dineros embar-gados, el asunto advino académico. Por esto, sostiene que no existe reclamación justiciable, pues “no se puede impe-dir un desembolso que ya ocurrió”. Solicitud de desestima-ción, pág. 4. Por último, advierte que la controversia ati-nente a los fondos producto del segundo depósito aún no se encuentra madura para disposición judicial, puesto que el BBVAPR no le ha solicitado al TPI que le entregue esos fondos. No procede la desestimación del recurso según intimado.
Primeramente, la alegada falta de legitimación activa está predicada en el cuestionamiento interpuesto por los recurridos al derecho que utilizó el peticionario como fun-damento para reclamar prioridad en el cobro. No obstante, dado el escenario procesal en que se suscita esta controver-sia, corresponde al TPI, en primera instancia, pasar juicio sobre el alcance del contrato entre el BBVAPR y 577HQ, y determinar, a base de ello, la jerarquía que concierne a los derechos allí acordados frente a los reclamos de los recu-rridos en calidad de acreedores por sentencia.
En cuanto a los otros dos planteamientos señalados en la solicitud de desestimación atinentes a la madurez y aca-demicidad de la causa de acción del BBVAPR, decretamos que, conforme lo discutimos en detalle más adelante al dis- *319 poner de los errores señalados en el recurso de certiorari, tampoco proceden.
Por consiguiente, declaramos “no ha lugar” la Moción de Desestimación que sometieron los recurridos.
I — I HH
Los errores esgrimidos por el peticionario en su recurso se reducen, inicialmente, a cuestionar la determinación del TA al resolver que la controversia en el presente recurso, es decir, su solicitud de intervención en el litigio, no está contenida entre las categorías de incidentes procesales particularizados en la Regla 52.1 de Procedimiento Civil de 2009, supra. De otra parte, aduce el BBVAPR que erraron, tanto el foro primario como el TA al concluir que su solici-tud de intervención era académica porque los fondos con-signados fueron dispuestos previamente mediante Orden de retiro expedida el 8 de septiembre de 2011.
Antes de adentrarnos en los contornos de la discreción judicial referente al recurso de certiorari, según consig-nado en el primer error, es menester dilucidar el estado de derecho aplicable a solicitudes de intervención dirigidas a ejercitar derechos sobre propiedad embargada o en vías de ejecución de sentencia según provisto en la Regla 21.5 de Procedimiento Civil de 2009 (32 L.P.R.A. Ap. V). De otra parte, es preciso examinar los argumentos atinentes a la doctrina de academicidad, según se tornan relevantes a los hechos del caso.
I — I <

Intervención

Los orígenes de la intervención en un litigio, según pro-visto en nuestro ordenamiento procesal, se sitúan en el an-tiguo Artículo 72 de los Códigos de Enjuiciamiento Civil de *320 1904 y de 1933 (Artículo 72).([8]) Más tarde, se incorporó el concepto intervención a la Regla 24 de Enjuiciamiento Civil de 1943 hasta que, eventualmente, se renumeró la Regla 24 como la Regla 21 de Procedimiento Civil de 1958.([9]) Chase Manhattan Bank v. Nesglo, Inc., 111 D.P.R. 767, 769 (1981). Como veremos, en las revisiones integrales sobre-venidas a nuestro esquema procesal efectuadas en 1979 y 2009, respectivamente, los criterios correspondientes al proceso de intervención en los casos continúan siendo pautados por la Regla 21 de Procedimiento Civil de 2009 (32 L.P.R.A. Ap. V) (Regla 21).
La intervención constituye un vehículo de gran utilidad y de uso común en los tribunales. A través del mecanismo provisto en la Regla 21, se faculta la comparecencia de un tercero en una acción judicial previamente instada. No obstante, queda claramente establecido que esta regla constituye meramente un instrumento procesal y, por lo tanto, no es fuente de derechos sustantivos ni establece causa de acción. “Es simplemente una disposición mediante la cual una persona que no es parte en el pleito comparece, voluntariamente o por necesidad, a presentar una reclamación o una defensa, en una acción pendiente, y *321 convertirse de ese modo en parte para fines de la reclama-ción o defensa presentada”. J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. J.T.S., T. II, 2011, pág. 779.
El esquema provisto mediante la figura de la intervención procura alcanzar un balance entre la economía procesal lograda al atenderse diversos asuntos de manera conjunta, contrapuesto con la necesidad de que los casos concluyan en un tiempo razonable. S.L.G. Ortiz-Alvarado v. Great American, 182 D.P.R. 48 (2011); Chase Manhattan Bank v. Nesglo, Inc., supra, pág. 770. Por lo tanto, la Regla 21 conlleva en su aplicación un análisis de índole pragmática más que conceptual. S.L.G. Ortiz-Alvarado v. Great American, supra; R. Mix Concrete v. R. Arellano & Co., 110 D.P.R. 869, 873 (1981). “Por ello, a la hora de evaluar una solicitud de intervención, debemos analizar primero si existe de hecho un interés que amerite protección y segundo, si ese interés quedaría afectado, como cuestión práctica, por la ausencia del interventor en el caso”. S.L.G. Ortiz-Alvarado v. Great American, supra, pág. 80. Véase Chase Manhattan Bank v. Nesglo, Inc., supra, pág. 770.
De otra parte, aunque las disposiciones atinentes a la intervención se deben interpretar desde una perspectiva liberal, no por ello corresponde refrendar su uso ilimitado fallando en toda instancia a favor de la intervención. Rivera v. Morales, 149 D.P.R. 672, 689 (1999); Chase Manhattan Bank v. Nesglo, Inc., supra, pág. 770.
Al presente, la Regla 21 rige todos los asuntos en mate-ria de la intervención en procesos judiciales. A su vez, dicha disposición procesal se compone de siete subsecciones, cada una de las cuales atiende un aspecto particular del proceso. Para propósitos de este caso, nos ceñimos a repa-sar solo aquellos acápites que guardan relación con las con-troversias planteadas conjuntamente con su evolución histórica.
*322 A estos efectos, comenzamos con el examen de la Regla 21.1 de Procedimiento Civil de 2009, la cual provee lo siguiente para aquellas instancias en las cuales la intervención procede como cuestión de derecho:
Mediante oportuna solicitud, cualquier persona tendrá dere-cho a intervenir en un pleito:
(a) Cuando por ley o por estas reglas se le confiere un dere-cho incondicional a intervenir, o
(b) cuando la persona solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pueda, de hecho, quedar afectado con la disposición final del pleito. 32 L.P.R.A. Ap. V.
Continuando en el orden acostumbrado, pasamos entonces a estudiar la logística para su implantación establecida a través de la Regla 21.4 de Procedimiento Civil de 2009.([10]) En su aspecto práctico, el proceso de intervención comienza con una solicitud al tribunal mediante la cual la parte interesada debe exponer aquellos fundamentos que justifican su injerencia en el procedimiento. Dicha solicitud debe estar acompañada con la alegación correspondiente a la reclamación o defensa que se pretende proseguir en el caso.
Las Reglas 21.5, 21.6 y 21.7 de Procedimiento Civil de 2009,([11]) por su parte, provienen de la extinta Ley de Tercería.([12]) Veamos.
A. Ley de Tercería
El procedimiento de tercería se introdujo a nuestro or-denamiento mediante la Ley de Tercería, aprobada el 14 de marzo de 1907.([13]) Dicho estatuto, el cual estuvo vigente hasta la adopción de las Reglas de Procedimiento Civil de *323 1979, surgió como parte de “un esfuerzo para hermanar los artículos sobre tercerías del enjuiciamiento civil español, con los artículos sobre la misma materia en el enjuicia-miento civil de California, formando un nuevo cuerpo insu-flado con las fuerzas vitales y la esencia de ambas legisla-ciones, adaptado al moderno sistema de enjuiciar”. R. Atiles Moreu, El recurso de tercería en el derecho procesal vigente, 5 (Núm. 4) Rev. Jur. U.RR. 360, 361 (1936).
En su acepción más amplia, la tercería implica la potestad dispensada a un tercero que reclama tener el dominio o mejor derecho sobre un bien embargado judicialmente o sujeto a ejecución, de levantar el embargo o detener la ejecución, a la vez que le solicita al tribunal que resuelva el asunto del alegado dominio o preferencia sobre dichos bienes. “Las tercerías se fundan, o en el dominio de los bienes embargados al deudor, o en el derecho del tercero a ser reintegrado de su crédito con preferencia al del acreedor de la acción principal”. Hernández v. Corte de Distrito, 34 D.P.R. 679, 681 (1925).
Así, pues, hemos explicado que “cabe la tercería de mejor derecho cuando surge un conflicto entre ciudadanos con respecto a su mejor derecho a hacer efectivos sus créditos en determinados bienes de un deudor común ...”. Trueba v. Zalduondo, 34 D.P.R. 743, 745 (1925). “El procedimiento de tercería tiene por objeto principal determinar de una manera rápida, pero con garantía para todas las partes interesadas, si los bienes muebles que se han em- *324 bargado como de determinada persona le pertenecen a otra que los reclama como suyos.” Roña Electric Co. v. Garriga, 99 D.P.R. 942, 949 (1971).
La tercería, según originalmente instituida en 1903, operaba de la siguiente manera: Una persona que recla-mara tener un derecho sobre propiedad mueble sujeta a embargo o ejecución, estaba obligada a someterle al funcio-nario encargado de cumplimentar la orden de ejecución o embargo un escrito bajo juramento en el cual certificara que su reclamación se hacía de buena fe y estaba dispuesto a prestar la fianza correspondiente. Una vez cumplidos es-tos dos requisitos, se le entregaba la propiedad al recla-mante en custodia legis hasta tanto el tribunal dispusiera otra cosa. Mientras tanto, el alguacil o la persona respon-sable de aceptar la fianza tenía que remitir los documentos antes mencionados al tribunal que había dictado la orden de ejecución o embargo. Una vez recibidos el juramento y la fianza, el Secretario del Tribunal lo anotaba en el libro de causas y notificaba a las partes concernidas para que comparecieran ante el juez en un término de diez días. Luego de la comparecencia de las partes, el tribunal decre-taba que se formulaba la cuestión por escrito y, posterior-mente, se celebraba una vista para dilucidar el asunto. En aquellos casos en que no comparecía el tercerista, se des-estimaba la demanda por abandono de la acción. Por otro lado, de ser la parte contraria la no compareciente, se le anotaba la rebeldía. Excepto en estos últimos dos supues-tos, el juez a cargo se reservaba su fallo atinente a la ter-cería, hasta tanto se dictase sentencia en el procedimiento que propició la tercería.
A pesar de que en sus inicios la tercería se pautó única-mente para casos de bienes muebles, al año siguiente de la aprobación de la Ley de Tercería se legisló para proveer un mecanismo que rigiera igualmente a situaciones en que estuviesen involucrados bienes inmuebles. Mediante dicho estatuto, aprobado el 12 de marzo de 1908 y denominado *325 Ley para Proveer el Procedimiento en los Casos de Tercería sobre Bienes Inmuebles, se añadió el Artículo 16(a) a la normativa entonces vigente. El mismo estableció que las tercerías respecto a bienes inmuebles se debían iniciar me-diante demanda contra todas las personas con interés en el asunto. Se dispuso, además, que en este tipo de tercerías, “sólo podrá suspender el tercerista una orden de ejecución para el trámite de subasta mediante interdicto prohibitorio (;injunction) ...”. 32 L.P.R.A. see. 1187 (ed. 1968).
B. La tercería y la intervención conforme al Artículo 72
De otra parte, es necesario destacar que durante la vigencia de la Ley de Tercería se dictaminó jurisprudencialmente que conforme las disposiciones del Artículo 72, tanto los que reclamaran el título o dominio, como los tenedores de gravámenes que recayeran sobre propiedades involucradas en un litigio, o cuyos derechos se pudiesen afectar por una sentencia, tenían derecho a intervenir en los procedimientos judiciales correspondientes.
En Mari v. Mari y The Royal Bank of Canada, 26 D.P.R. 665 (1918), reconocimos por primera vez el derecho de un reclamante que alegaba tener un gravamen preferente so-bre bienes embargados a intervenir en un pleito ya iniciado. De este modo, ratificamos el uso de la interven-ción provista en el Artículo 72 como método alterno a la tercería para escrutar la prioridad de los derechos invoca-dos por un tercero sobre propiedad embargada. Igual-mente, en Estrada v. Corte Municipal, 50 D.PR. 480 (1936), permitimos darle curso a una demanda de inter-vención para disponer del alegado traspaso de un terreno previo a su embargo. A través de los años, ratificamos tam-bién el derecho de un reclamante a intervenir en un pleito pendiente en el que se ordenó un embargo sobre bienes que éste reclamaba como suyos. Reyes & Pagán v. Corte, 52 D.P.R. 654 (1938); Benitez v. Tabacaleros, etc. y Fed. Int. *326 Credit Bank, 50 D.P.R. 791 (1936); Casanova v. Carballeira, Juez, 41 D.P.R. 850 (1931).
Cónsono con lo anterior, resolvimos que la Ley de Terce-ría dejó incólume el Artículo 72. Así, pues, hemos decre-tado, expresamente, que “[l]os dos remedios pueden subsis-tir juntos”. Casanova v. Carballeira, Juez, supra, pág. 852. Véanse, además: Hernández v. Iglesias, 58 D.P.R. 406 (1941); Murray v. Tabacaleros de Bayamón, Inc., 43 D.P.R. 210 (1932). Por eso, reiteradamente dispusimos que “el re-medio de intervención existente en el derecho civil e incor-porado a nuestro derecho procesal al adoptarse las dispo-siciones del Código de California sobre la materia, puede ser utilizado por el que reclame como suya una propiedad embargada como perteneciente a otra persona o por el que reclame cualquier gravamen o derecho sobre la propiedad embargada; y que el hecho de que el interventor pueda hacer uso del remedio de tercería no es óbice para el ejer-cicio de su derecho de intervención”. Reyes & Pagán v. Corte, supra, pág. 657 y casos allí citados. “[E]l hecho de que [una] misma cuestión haya podido resolverse también en una demanda de tercería, no es óbice para que la corte inferior pudiera resolverla por medio de una simple de-manda de intervención, teniendo como tenía jurisdicción sobre todas las partes interesadas y sobre la propiedad en-vuelta en la controversia”. Benitez v. Tabacaleros, etc. y Fed. Ink Credit Bank, supra, pág. 797.
A base de lo anterior, podemos colegir que el antiguo procedimiento de tercería y la intervención originalmente dispuesta en el Artículo 72 no resultaban sinónimas. Aun-que ambos procedimientos se basaban en controversias co-munes, el mecanismo disponible a través de cada uno de ellos resultaba diferente. Diferían entre sí ambos esque-mas en que este último estaba predicado en la participa-ción directa de un reclamante que busca ser incluido como parte en una acción principal que ya discurría judicial-mente. Ahora bien, la tercería consistía en un procedí- *327 miento judicial separado donde el tribunal venía única-mente llamado a esgrimir una controversia —ya sea sobre el título o dominio o la preminencia de los derechos del tercero— atinente a una propiedad objeto de embargo o ejecución.
En Borinquen Trading Corp. v. Corte de Dist. de San Juan, 32 D.P.R. 199, 200 — 201 (1923), abundando sobre es-tas diferencias expresamos lo siguiente:
La aparente confusión en este caso parece que proviene de la relación que trata de establecer el peticionario entre una acción principal y un incidente de tercería. Este incidente no es una intervención del tercero en la materia en litigio del caso principal para proteger sus derechos en el sentido del artículo 72 del Código de Enjuiciamiento Civil, sino la introducción de una nueva cuestión litigiosa separada e independiente.
C. La intervención conforme a la Regla 21.5
En 1979, por recomendación del Comité Procesal Civil, se derogó la Ley de Tercería y, en su lugar, se agregó la Regla 21.5 a nuestro ordenamiento procesal. Como fundamento para ello, dicho organismo expresó que el uso del mecanismo de tercería había mermado en los procesos judiciales a favor de la intervención porque esta última proveía un método más ágil y sencillo para resolver las controversias planteadas en este tipo de asunto. Ya que la intervención permitía atender, igualmente, reclamaciones atinentes a derechos sobre bienes embargados, sus miembros entendieron que era innecesario dejar vigente el proceso alterno de tercería. Así, pues, expusieron las siguientes razones para justificar el cambio recomendado:
La práctica actualmente ... es utilizar el procedimiento es-tablecido en la Regla 21 sobre intervención con preferencia sobre el antiguo procedimiento establecido en la Ley de Terce-ría, por ser aquél más simple y rápido. [L]a intervención, cuyo interés estriba en los bienes embargados, hace las veces de una tercería y se prefiere como remedio porque su campo de acción es más amplio y es un remedio más expedito. Siendo *328 ello así, ante la realidad de que el procedimiento bajo las dis-posiciones de la Regla 21 de las de Procedimiento Civil puede ser utilizado con iguales fines que la Ley de Tercería y el mismo resulta más rápido y efectivo, recomendamos se dero-gue la actual Ley de Tercería, y se adicionen a la Regla 21 las disposiciones necesarias para complementar la misma en lo relacionado con terceros interventores que reclamen bienes embargados. De este modo, se simplifica el procedimiento y se hace más acorde a la filosofía que inspira nuestro derecho pro-cesal civil. Informe sometido al Consejo sobre la Reforma de la Justicia en Puerto Rico, Comité Procesal Civil, 1976, págs. 356-357.
La Regla 21.5, la cual no ha sufrido cambio significativo desde que se aprobó originalmente en 1979, dis-pone como sigue:
Siempre que un alguacil o alguacila proceda a cumplimen-tar una orden de ejecución de embargo o cualquier otra orden contra alguna propiedad mueble o inmueble, y dicha propie-dad o cualquier parte de ella, o algún interés en ella, sea re-clamada por un tercero, éste tendrá derecho a presentar una demanda de intervención. El procedimiento de intervención relacionado con bienes muebles e inmuebles se regirá por es-tas reglas. 32 L.P.R.A. Ap. V.
En la versión de las Reglas de Procedimiento Civil de 1979, también se añadieron las Reglas 21.6 y 21.7. Éstas disponían lo concerniente a la entrega provisional de los bienes embargados a un interventor, así como las condicio-nes atinentes a la fianza exigible en estos supuestos.([14]) El Comité Procesal Civil reconoció que el método provisto en la Ley de Tercería resultaba deficiente pues todo lo relacio-nado al monto y a la prestación de la fianza recaía exclu-sivamente en manos del alguacil. Se legisló, por lo tanto, para asegurar la participación judicial en esta fase del pro- *329 ceso, cónsono con las otras fianzas exigidas por nuestro ordenamiento procesal.
Con relación a la moción para la entrega de los bienes embargados, al presente la Regla 21.6 de Procedimiento Civil de 2009 (32 L.P.R.A. Ap. V) (Regla 21.6) dis-pone lo siguiente:
En aquellos casos en que la parte interventora desee obte-ner la posesión de la propiedad embargada, deberá presentar una moción al efecto, la cual se resolverá ofreciendo a las par-tes la oportunidad de una vista para expresarse sobre la soli-citud del (de la) interventor!a). Si se declara “con lugar” dicha moción, la parte interventora deberá prestar fianza por el im-porte del embargo más cualquier otra suma que el tribunal estime apropiada para garantizar los derechos a la parte afec-tada como condición para recuperar la posesión de dicha propiedad.
Por su parte, las condiciones de la fianza se encuentran fijadas en la Regla 21.7 de Procedimiento Civil de 2009 (32 L.P.R.A. Ap. V) (Regla 21.7), la cual, en la actualidad, dis-pone como sigue:
La fianza se constituirá con la condición de que si la parte reclamante no logra justificar su derecho, devolverá la propie-dad al(a la) funcionario(a) que haya efectuado el embargo, al(a la) sucesor(a) de éste o al(a la) depositario(a) de los bienes, y deberá responder por cualquier deterioro o menoscabo que haya sufrido la propiedad, incluso por su pérdida total. Asi-mismo, la parte reclamante satisfará cualquier otra compen-sación que el tribunal estime justa y razonable, si ésta procede según los hechos específicos del caso.
Si la parte reclamante logra justificar su derecho, se cance-lará la fianza.
Como se puede apreciar, ambas disposiciones transcri-tas anteriormente trazan, a grandes rasgos, el procedi-miento dispuesto previamente en la Ley de Tercería, atem-perado a las exigencias de nuestro esquema procesal. Al igual que lo anteriormente dispuesto en el estatuto dero- *330 gado, se le permite a un tercero solicitar la devolución de propiedad embargada, así como su entrega mediante la prestación de la fianza correspondiente. No obstante, a diferencia de la antigua tercería, se provee para la interven-ción directa en un proceso judicial que ya discurre.
El mecanismo de intervención establecido mediante la Regla 21.5, antes citada, se distingue en que ésta se encuentra disponible a una parte ajena al caso, aun luego de dictada sentencia en el pleito. Esta sirve como vehículo procesal a un tercero —extraño al litigio original— para someter a la consideración del tribunal una controversia relacionada con un interés o derecho que pretende poseer sobre la propiedad que en su día se proyecta ejecutar para hacer efectiva la sentencia.
Los procesos al amparo de esta regla versan sobre inciden-tes en un pleito incoado previamente entre otros litigantes, en el cual comparece un tercero que alega tener algún interés o derecho sobre la propiedad mueble o inmueble cuando un al-guacil procede a cumplimentar una orden de ejecución, embargo o cualquier otra orden contra la propiedad.
Esta Regla 21.5, como su antecesora, están predicadas bajo la premisa que cuando en la etapa posterior al juicio se suscita un conflicto sobre la titularidad reclamada con la propiedad que había sido embargada y en la etapa de ejecución era objeto de subasta o había sido objeto de una subasta judicial, para resolver este conflicto es necesario la presentación de una de-manda contra todas las personas que tengan interés en el asunto para dirimir el conflicto de titularidad. Cuevas Sega-rra, op. cit., págs. 806-807.
Queda claro, pues, que a diferencia de las otras modalidades expresadas en la Regla 21, la intervención provista en la Regla 21.5 no guarda relación con la controversia principal suscitada entre un demandante y la parte demandada. Más bien, la reclamación del interventor se circunscribe a salvaguardar aquellos derechos atinentes a la propiedad embargada o sujeta a algún dictamen judicial *331 para responder por la sentencia dictada o que se pueda dictar en su día en el pleito inicial.
De otra parte, advertimos que la Regla 21.5 está redactada en términos mandatorios. Por lo tanto, según surge claramente de su texto, la intervención provista mediante esta disposición procede como cuestión de derecho en aquellas situaciones en las que un tercero invoque tener un derecho o interés preferencial sobre una propiedad que haya sido objeto de una orden de embargo u otro decreto judicial. Véanse, además: Aponte v. Román, 145 D.P.R. 477, 486 (1998); Progressive Finance v. LSM Gen. Const., 144 D.P.R. 796, 803 (1998) (“Esa intervención ... se produjo al amparo de la Regla 21.5 ... que como cuestión de derecho absoluto siempre la autoriza cuando se embarga una propiedad perteneciente, o con interés, de un tercero.” (Énfasis en el original). Opinión concurrente del Juez Asociado Señor Negrón García).
Paralelamente, la Regla 21.6 entra en juego cuando el reclamante desee, igualmente, obtener la posesión de la propiedad embargada mientras se ventila su derecho sobre la misma. “La [R]egla [21.6], como es de notarse, aplica únicamente a las intervenciones permitidas por la Regla 21.5.” Cuevas Segarra, op. cit., pág. 809. Conforme a lo provisto en dicha norma procesal, el interesado deberá pre-sentar una moción a tales efectos, “la cual se resolverá ofreciendo a las partes la oportunidad de una vista para expresarse sobre la solicitud ...”. Regla 21.6. En la even-tualidad de que el tribunal acceda a la petición, el inter-ventor tercerista estará obligado, previo a recuperar la po-sesión de dicha propiedad, a prestar una fianza que cubra no solamente el monto del embargo, sino que, además, ga-rantice los derechos de la parte afectada.
Por su parte, la Regla 21.7 provee el mecanismo para disponer de los bienes embargados y recuperados transitoriamente por el interventor, una vez ha concluido *332 el procedimiento para adjudicar el derecho que éste ha reclamado. En la eventualidad de que el interventor, luego de recuperar pendente lite la posesión de la propiedad em-bargada, no pueda justificar su derecho sobre la misma, está obligado a devolverla al funcionario responsable del embargo. Responderá, además, por cualquier deterioro que haya sufrido dicha propiedad, así como por cualquier otra compensación que proceda. Sin embargo, de justificar su derecho sobre la propiedad embargada, se cancelará la fianza y la mantendrá en su posesión.
Aclarada la normativa relevante al derecho de interven-ción dispuesto en la Regla 21.5, procedemos a aplicarla a los hechos del caso.
En este recurso no existe controversia sobre la trayecto-ria de los fondos embargados como resultado del mandato judicial para hacer efectiva la Sentencia previamente dic-tada a favor de los recurridos. Por otra parte, si bien es cierto que cuando el BBVAPR solicitó intervención en el litigio el tribunal a quo ya había ordenado el desembolso de los fondos, no es menos cierto que el tribunal aún poseía la custodia del dinero. Tanto es así que el 28 de septiembre de 2011, transcurrida al menos una semana desde que las so-licitudes de reconsideración y de intervención fueron some-tidas, el TPI ordenó la transferencia de los fondos que con-signó el Departamento del Trabajo de la cuenta de la Secretaría Regional a la cuenta del Alguacil Regional. De hecho, no fue sino hasta dos días más tarde, es decir, el 30 de septiembre de 2011, que el Alguacil Regional finalmente expidió los cheques a nombre de los recurridos.
La intervención solicitada conforme la Regla 21.5, al igual que el procedimiento de tercería, van dirigidos, ya sea a levantar un embargo trabado por una orden judicial o a detener la ejecución de una sentencia a base de los derechos reclamados por el interventor sobre la propiedad afectada. Resulta axiomático, por lo tanto, que dicha *333 regla aplica, incluso, en casos donde se haya dictado sen-tencia en el pleito y en el que se pretende intervenir.
Conforme al claro mandato de la Regla 21.5, una vez presentado prima facie un alegado derecho sobre la propie-dad embargada, el TPI no tiene discreción para rechazar la intervención de un tercero que alega tal interés. En este caso, el BBVAPR reclamó un derecho prioritario sobre las rentas consignadas por el Departamento del Trabajo, a la vez que solicitó al tribunal que dilucidara la controversia suscitada sobre a cuál de las partes concernidas correspon-día el dinero. Quiere esto decir que, en ese preciso instante, como asunto de estricto derecho procesal, la intervención del BBVAPR resultaba mandatoria. Por consiguiente, los méritos de la reclamación interpuesta por el peticionario frente a las objeciones presentadas por los recurridos que-daban para ulteriores procedimientos.
La solicitud de intervención en este caso hizo alusión específica al contrato de cesión de rentas celebrado entre el peticionario y 577HQ, lo que preliminarmente resultaba suficiente para propósitos de la Regla 21.5. Si el derecho reclamado por el BBVAPR era o no válido, o, si en efecto, tenía prioridad sobre el de la parte embargante, quedaba para dilucidarse en otro momento. No podemos perder de vista que es esa precisamente la razón de ser de la Regla 21.5. Constituye un vehículo procesal creado concreta-mente para ventilar controversias donde se pone en juego la titularidad o mejor derecho sobre una propiedad embar-gada o en vías de ejecución.
Resolvemos, por lo tanto, que como cuestión de derecho y conforme lo provisto en la Regla 21.5, el BBVAPR tenía la opción de intervenir en el caso instado por los recurridos en contra de 577HQ.
*334 V

Academicidad

Igualmente, coincidimos con la posición del peticionario en cuanto a que, al momento cuando éste solicitó interven-ción en el caso de cobro de dinero de los recurridos, su petición no resultaba académica.
La jurisdicción de los tribunales se encuentra circunscrita a casos justiciables. Es decir, está ceñida a aquellas situaciones en que estén presentes controversias reales y vivas, susceptibles a que el tribunal las adjudique, y donde éste imparta un remedio que repercuta en la relación jurídica de las partes ante sí. Torres Santiago v. Depto. Justicia, 181 D.P.R. 969, 982 — 983 (2011); Asoc. Fotoperiodistas v. Rivera Schatz, 180 D.P.R. 920, 931 (2011); U.P.R. v. Laborde Torres y otros I, 180 D.P.R. 253, 279 — 280 (2010); hozada Tirado et al. v. Testigos Jehová, 177 D.P.R. 893, 907-908 (2010). Entre las doctrinas que han emergido dentro de los lindes de justiciabilidad se encuentra la de academicidad. Torres Santiago v. Depto. Justicia, supra; Lozada Tirado et al. v. Testigos Jehová, supra, pág. 908.
Un caso se torna académico cuando ocurren cam-bios en su trámite, ya sea en los hechos o en el derecho, que convierten la controversia en inexistente, de manera tal que el dictamen que tuviera a bien emitir el tribunal no tendría efecto práctico sobre las partes. Torres Santiago v. Depto. Justicia, supra; Asoc. Fotoperiodistas v. Rivera Schatz, supra, pág. 932; U.P.R. v. haborde Torres y otros I, supra, pág. 280; hozada Tirado et al. v. Testigos Jehová, supra, pág. 908.
No obstante, se han reconocido ciertas excepciones a la doctrina de academicidad que permiten la intervención judicial aun cuando el asunto planteado aparenta haberse tornado académico. Así pues, se autoriza a los tribunales a intervenir en aquellos casos en los cuales se plantea una *335 cuestión recurrente, o susceptible de repetición, y capaz de evadir la revisión judicial; cuando el demandado ha modificado la situación de hechos, pero el cambio no aparenta ser permanente, y cuando algunos aspectos de la controversia se han tornado académicos, pero persisten importantes efectos colaterales. Torres Santiago v. Depto. Justicia, supra; Asoc. Fotoperiodistas v. Rivera Schatz, supra, pág. 933; U.RR. v. Laborde Torres y otros I, supra, pág. 281; Lozada Tirado et al. v. Testigos Jehová, supra, pág. 908.
Diferimos de la determinación del TPI, que luego fue avalada por el TA, de que la solicitud de intervención de la parte peticionaria no procedía por ser académica.
La controversia que planteó el BBVAPR a través de su solicitud de intervención de 20 de septiembre de 2011, te-nía relación con su alegado derecho prioritario sobre las rentas consignadas por el Departamento del Trabajo en respuesta al Mandamiento de Embargo. Según expusimos anteriormente, para esa fecha el foro primario aún tenía custodia y control sobre estos fondos. Notamos que, como parte de los procesos judiciales, el tribunal podía constatar este dato fácilmente cuando considerara la solicitud del BBVAPR. De hecho, el 28 de septiembre de 2011, el TPI decretó la transferencia de los fondos a la cuenta del Al-guacil Regional y los fondos no fueron desembolsados hasta el 30 de septiembre de 2011.
No cabe duda de que los planteamientos sometidos a través de la fallida intervención del BBVAPR denotaban controversias reales y vivas, susceptibles a la adjudicación del tribunal. Conforme a la reclamación aducida, quedaba por resolver a cuál de los adversarios en el debate sobre los fondos le correspondía recibir las rentas pagadas y consig-nadas por el Departamento del Trabajo. De igual forma, es lógico pensar, como en efecto ocurrió, que continuarían sur-giendo los embargos promovidos por los recurridos hasta satisfacer toda la deuda por Sentencia a su favor, que so- *336 brepasaba los dos millones de dólares. Ciertamente, la con-troversia era capaz de repetirse ante el TPI.
Resolvemos, por lo tanto, que incidieron ambos foros al coincidir en que la causa de acción expuesta en la solicitud de intervención sometida por el BBVAPR era académica.
VI
Regla 52.1 — “Certiorari”
Pasamos ahora a considerar si la Resolución del TA, la cual confirmó el dictamen del TPI, y advirtió que el asunto planteado en el recurso instado por el BBVAPR no tenía cabida en ninguno de los incisos de la Regla 52.1 ni en las disposiciones de la Regla 40 de su Reglamento, supra, re-sulta acertada.
Según aprobada en el 2009, la Regla 52.1 alteró sustan-cialmente el enfoque prácticamente irrestricto, y hasta en-tonces vigente, característico de la revisión interlocutoria de las órdenes y resoluciones emitidas por el TPI, dando paso a un enfoque mucho más limitado. De esta manera, se pretendió atender los inconvenientes asociados con la dilación que el antiguo esquema ocasionaba en los procedi-mientos, así como la incertidumbre que se suscitaba entre las partes del litigio. Se entendió que, en su mayor parte, las determinaciones interlocutorias podían esperar hasta la conclusión final del caso para ser revisadas en apelación, conjuntamente con la sentencia dictada en el pleito. De igual forma, con el propósito de acelerar el trámite ante el foro apelativo intermedio, a través de la nueva regla se preceptuó que en los casos en que se denegara expedir el recurso de certiorari no sería necesario que el tribunal ex-pusiera sus razones para tal determinación. Véase Rivera Figueroa v. Joe’s European Shop, 183 D.P.R. 580 (2011).
La Regla 52.1 fijó taxativamente los asuntos aptos para revisión interlocutoria del TA mediante el recurso *337 de certiorari. No obstante, al año siguiente a su aproba-ción, fue necesario expandir la potestad conferida a dicho foro para abordar también situaciones no previstas en la versión original de la regla, pero que ameritaban la inter-vención adelantada del foro revisor, ya fuese por su natu-raleza o el efecto producido a las partes.
Cónsono con lo anterior, se aprobó la Ley 177-2010 me-diante la cual se añadieron dos nuevos preceptos a las ca-tegorías inicialmente dispuestas para revisión según la Re-gla 52.1. Así, pues, se extendió la facultad de presentar recursos de certiorari para revisar también aquellas órde-nes o resoluciones interlocutorias dictadas por el TPI que involucren asuntos de interés público o que presenten si-tuaciones que demanden la atención inmediata del foro re-visor, pues aguardar hasta la conclusión final del caso con-llevaría un “fracaso irremediable de la justicia”.
En lo pertinente al recurso de autos, la Regla 52.1 vigente, en su parte pertinente, dispone lo siguiente:
El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 ... o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto ante-riormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Pri-mera Instancia cuando se recurra de decisiones sobre la admi-sibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro.)32 L.P.R.A. Ap. V (Supl. 2011).
El auto de certiorari constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal *338 inferior. Pueblo v. Díaz de León, 176 D.P.R. 913, 917 (2009); García v. Padró, 165 D.P.R. 324, 334 (2005).
La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autori-zar su expedición y adjudicar sus méritos. El concepto dis-creción necesariamente implica la facultad de elegir entre diversas opciones. “Sin embargo, en el ámbito judicial, la discreción no debe hacer abstracción del resto del Derecho. ... Es decir, discreción es una forma de razonabilidad apli-cada al discernimiento judicial para llegar a una condición justiciera.” (Enfasis en el original y citas omitidas.) Pueblo v. Rivera Santiago, 176 D.P.R. 559, 580 (2009). Véanse: Torres Martínez v. Torres Ghigliotty, 175 D.P.R. 83, 98 (2008); García v. Padró, supra, págs. 334-335.
Es importante señalar, no obstante, que la discreción judicial “no se da en un vacío ni en ausencia de otros parámetros”. Rivera Figueroa v. Joe’s European Shop, supra. En el caso particular del TA, sus oficios se encuentran enmarcados dentro de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, los cuales pautan para la expedición del auto de certiorari. Así, pues, para poder ejercer sabiamente su facultad discrecional en la consideración de los asuntos planteados mediante dicho recurso, el precepto antes mencionado dispone lo siguiente:
El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y ma-nifiesto en la apreciación de la prueba por el Tribunal de Pri-mera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser eleva-dos, o de alegatos más elaborados.
*339 (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dila-ción indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 L.P.R.A. Ap. XXII-B.
La Regla 40, supra, adquiere mayor relevancia en situa-ciones como la presente en que, de ordinario, no están dis-ponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Las resoluciones atinentes a asuntos postsentencia no se encuentran incluidas entre aquellas determinaciones de naturaleza interlocutoria ca-tegóricamente sujetas a escrutinio mediante el recurso de certiorari. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cuali-fica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el pro-ceso, tal como lo es la ejecución de sentencia.
Es por ello que el TA venía obligado a atender con rigu-rosidad la denegatoria del TPI de la solicitud de interven-ción del BBVAPR para, de este modo, procurar evitar un fracaso de la justicia/[15]) A estos efectos, notamos que en este caso en particular, a pesar de contar con el derecho de intervención a su favor, a la parte peticionaria se le cerra-ron las puertas del tribunal sin brindarle la oportunidad de presentar evidencia a favor de su alegado derecho pre-ferente sobre las rentas en cuestión.
De otra parte, según explicamos anteriormente, aunque se había ordenado el desembolso de los fondos con anterio-ridad a la solicitud de intervención, no por ello el foro pri-mario había perdido su facultad para resolver la cuestión planteada por el peticionario.
*340 Por último, es necesario destacar que, tal como ocurrió en este caso, la situación de aquellos que intervienen en un litigio apoyados en el derecho estipulado en la Regla 21.5 de Procedimiento Civil de 2009, se agrava puesto que, al no ser parte del pleito original, no existe un mecanismo con-creto para notificarle de los embargos o de la consignación de fondos. Así, pues, a menos que se le permitiera plantear su posición formalmente en los procesos judiciales, se po-dría perpetuar lo sucedido a nivel de instancia sin que el BBVAPR lograra que el TPI dilucidara su reclamación.
Resolvemos, por lo tanto, que el tribunal apelativo inter-medio no cumplió con su cometido de sopesar el efecto que tendría si éste se negara a revisar la resolución impug-nada, conforme a lo dispuesto tanto en nuestro ordena-miento procesal como en la reglamentación aplicable. Cier-tamente, no expedir el auto de certiorari bajo las circunstancias presentes en este caso, resultó en un fra-caso de la justicia. Se le impidió al peticionario toda opor-tunidad de revisión de la determinación recurrida y de ventilar sus derechos sobre los dineros embargados.
VII
Decretamos, por lo tanto, que erró el TA al negarse a expedir el recurso de certiorari solicitado y, de este modo, validar la denegatoria de intervención según la sometió el peticionario ante el TPI conforme la Regla 21.5.
Corresponde, en primera instancia, al TPI pasar juicio sobre el alcance del contrato entre el BBVAPR y 577HQ, así como determinar la jerarquía que corresponde a los de-rechos allí acordados frente a los derechos de los recurridos en calidad de acreedores por sentencia.
A base de lo antes expuesto, se expide el auto de certio-rari según solicitado. Se revoca la Resolución del TA de 21 de octubre de 2011 y se devuelve el caso al TPI para que se autorice la intervención del BBVAPR y, oportunamente, re- *341 suelva las controversias atinentes a quién tiene derecho prioritario sobre los dineros embargados en cobro de la sentencia emitida a favor de los recurridos.

Se dictará sentencia de conformidad.

Las Juezas Asociadas Señoras Fiol Matta y Rodríguez Rodríguez concurrieron sin opinión escrita.

(1) 32 L.P.R.A. Ap. V.

(2) íd.

(3) Véase Orden Enmendada, expedida por el Tribunal de Primera Instancia (TPI) el 28 de septiembre de 2011, en la que se ordena la transferencia de dicha cantidad de la cuenta de la Secretaría Regional a la cuenta del Alguacil Regional. Apéndice de la Petición de certiorari, pág. 291.

(4) El Departamento del Trabajo trató infructuosamente de consignar estas can-tidades el 19 de septiembre de 2011, pero los cheques no fueron aceptados porque estaban expedidos a nombre de 577HQ.

(5) Esta cantidad concierne al canon arrendatario correspondiente a abril de 2011 y unos balances pendientes de mayo y junio 2011, así como el canon arrenda-tario de los meses de septiembre, octubre y noviembre de 2011. La renta mensual ascendía a $83,306.67.

(6) Informe solicitado a la División de Cuentas del TPI.

(7) De esta forma, paralizamos los procedimientos ante el TPI, impidiendo así desembolsos adicionales de los dineros consignados.

(8) El Artículo 72, según recogido en el Código de Enjuiciamiento Civil de 1933, disponía lo siguiente:
“Cualquiera persona antes de la celebración del juicio podrá intervenir en una acción o procedimiento, si tuviere interés en el asunto en litigio, en el éxito de cual-quiera de las partes, o algún derecho en contra de ambas. Esta intervención tiene lugar cuando a un tercero se le permita ser parte en la acción o procedimiento se-guido entre otras personas, ya asociándose al demandante para reclamar lo que se pretenda en la demanda, o ya uniéndose al demandado para oponerse a las preten-siones del demandante, o pidiendo algo en sentido adverso a las reclamaciones de demandante y demandado, cuya intervención se efectúa por medio de demanda, exponiendo en ella los motivos en que se funde, presentada con permiso de la corte, y notificada a las partes que no hubieren comparecido y a los abogados de las com-parecidas, quienes podrán contestar o alegar una excepción a ella, como si fuese una demanda ordinaria”. 32 L.P.R.A. see. 322 (ed. 1955).

(9) En su artículo sobre el tema de la intervención, el Profesor Richard B. Ca-palli hace un recuento exhaustivo del desarrollo de esta medida procesal a la vez que intercala sus recomendaciones para futuras enmiendas cónsonas con la trayectoria procesal federal. R.B. Capalli, The Guest Who Came to Dinner: Intervention Practice in Puerto Rico Civil Procedure, 40 (Núm. 4) Rev. Jur. U.P.R. 461 (1971).

(10) 32 L.P.R.A. Ap. V.

(11) fd.

(12) 32 L.P.R.A. ants. sees. 1171-1190.

(13) A pesar de que la Ley de Tercería aparecía publicada entre las disposiciones de los Códigos de Enjuiciamiento Civil de 1904 y 1933, no por ello estaba incorporada ni formó parte de este cuerpo estatutario. Véase Ocasio González & Co. v. Corte de Distrito, 38 D.P.R. 7, 8 (1928).
*323 La explicación para ello nos la brinda el jurista Rafael Atiles Moreu de la ma-nera siguiente:
“En la desorientación que precedió a la aprobación de los códigos del 1904 —aprobados en forma festinada e inconsulta— olvid[o]se legislar sobre la materia de tercerías, lo que intent[o]se subsanar mediante la promulgación de la ley de tercerías de marzo 14, 1907, enmendada en marzo 12, 1908”. R. Atiles Moreu, El recurso de tercería en el derecho procesal vigente, 5 (Núm. 4) Rev. Jur. U.P.R. 360, 361 (1936).
En este artículo el autor nos presenta un relato minucioso y exhaustivo de los orígenes y el desarrollo de las disposiciones de la Ley de Tercería incorporadas a nuestro sistema de derecho.

(14) Es pertinente señalar que la versión incorporada inicialmente en las Reglas 21.5 a la 21.7, conforme a las enmiendas de 1979, y ahora parte de las reglas aprobadas en el 2009, no corresponden a ninguna disposición previa en nuestro ordena-miento procesal o en las reglas federales. Notamos, además, que desde su aprobación en 1979, ambas reglas han sufrido únicamente enmiendas mínimas.

(15) Véase Regla 40(G) del Reglamento del Tribunal de Apelaciones, 4 L.RR.A. Ap. XXII-B.